James E. STILTNER

v.

BERETTA U.S.A. CORP.

Civ. No. JFM–92–3507.

United States District Court,
D. Maryland.

Feb. 18, 1994.

Marc H. Rifkind, Slevin & Hart, P.C., Susan Boyle, Ronald P. Wilder, Baptiste & Wilder, Washington, DC, for plaintiff.

Jerrold A. Thrope, Gordon, Feinblatt, Rothman, Hoffberger & Hollander, Baltimore, MD, for defendant.

## MEMORANDUM

MOTZ, District Judge.

James E. Stiltner has brought this action against his former employer, Beretta U.S.A., alleging that it violated Section 502(a)(3) of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a)(3), when its plan administrator denied his claim for long-term disability ("LTD") benefits. He also asserts common law claims for breach of contract and intentional infliction of emotional distress.[1] Discovery has been completed,

---

1. Plaintiff also claims that defendant violated Section 510 of ERISA, 29 U.S.C. § 1140, by threatening to discontinue his health benefits unless he settled his ERISA claims favorably to defendant. Earlier in this litigation plaintiff filed

a motion in connection with this claim seeking to preliminarily enjoin defendant from discontinuing the health benefits. I denied the motion on March 1, 1993 on the ground that plaintiff had failed to prove that defendant had "discrimi-

and defendant has moved for summary judgment.

## I.

In October of 1988, plaintiff lost his job in South Carolina when his employer, FN Manufacturing, decreased the size of its work force. Plaintiff contacted his former boss, Thomas Valorose, then a supervisor at defendant's Accokeek, Maryland manufacturing plant, and inquired about job opportunities at the plant. Though no job was available at that time, several weeks later, defendant's Human Resources Manager, Peter Axelrod, called plaintiff and invited him to an interview. On November 17, 1988, plaintiff was offered a position as a tool room supervisor. From November 21, 1988 until March 1, 1989, plaintiff worked as an independent contractor in defendant's tool room. In addition to his salary, plaintiff received free housing and defendant paid the premiums on the COBRA health insurance coverage provided by FN Manufacturing. During this period of time plaintiff received no disability coverage.

As of March 1, 1989, plaintiff became a regular employee at the Accokeek plant. The terms of his employment were outlined in a letter from Axelrod dated February 28, 1989. The letter, characterized by plaintiff as an employment contract and by defendant as an "offer letter," contained a list of employee benefits including the following: "Long Term Disability: Pays 60% of salary after six months of disability (after one year of employment). Payable to age 70." Around the same time he received the letter, plaintiff also enrolled in an LTD plan that defendant provided through American Bankers Life Assurance Company of Florida ("LTD plan") and filled out an application for medical insurance.

On the same day that plaintiff received the letter, he met with Axelrod. Axelrod reviewed the list of benefits with him and agreed to make his employment date retroactive to November 28, 1988. Plaintiff alleges that he did not receive an insurance certificate that disclosed a preexisting condition limitation on the LTD plan. Nor did he receive a Summary Plan Description ("SPD") of the LTD plan. In any event, the SPD did not mention the preexisting condition exclusion.

In February of 1990, defendant changed the insurer of its LTD plan from American Bankers Life Assurance Company of Florida to the Guardian Life Assurance Company of America. Guardian issued a new SPD that clearly expressed the preexisting condition exclusion. Plaintiff claims that he did not receive a copy of the new SPD at that time.

On February 6, 1990 plaintiff had a heart attack. He worked intermittently during March, May and the beginning of June and was then hospitalized for most of June and July. He has not worked since June 9, 1990. While in the hospital defendant sent plaintiff his insurance information, including the two SPDs. On July 15, 1990, plaintiff applied to Guardian for LTD benefits. On February 20, 1991, his claim was denied on the basis that he had a heart ailment that was a preexisting condition.

After Guardian denied plaintiff's claim, defendant came to plaintiff's defense, writing to Guardian on plaintiff's behalf and continuing his health benefits. Sometime during 1992, however, the relationship between the two soured, after plaintiff suggested that defendant was liable for the disability benefits. After settlement negotiations failed, plaintiff instituted this action.

## II.

■ In Count I plaintiff asserts a claim under section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3).[2] He bases this claim upon the old SPD, which did not contain a preexisting

---

nated" against him in any way since there was no other employee of defendant whose health benefits had been continued as long as plaintiff's. Plaintiff appealed my ruling, and the appeal is awaiting decision by the Fourth Circuit. No useful purpose would be served by my discussing the issues further until the Fourth Circuit has spoken. I will therefore simply enter judgment in favor of defendant in accordance with the views that I previously expressed.

2. "A civil action may be brought ... by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan or (B) to obtain other appropriate equitable relief (i) to

condition exclusion. The claim fails for a simple reason. According to his deposition testimony, he did not see the old SPD until after he became disabled, and he has presented no evidence that he would have purchased other LTD insurance for himself had he known the true facts. Thus, he cannot show reliance or prejudice as the Fourth Circuit has squarely held a claimant must do in order to recover under an inaccurate summary plan description. *See Pierce v. Security Life Ins. Co.*, 979 F.2d 23, 30 (4th Cir. 1992); *Aiken v. Policy Management Systems Corp.*, 13 F.3d 138 (4th Cir.1993).

Plaintiff attempts to overcome his failure of proof by asserting that although he did not see the old SPD until after the became disabled, he did rely upon earlier statements made by defendant, specifically (1) an oral representation allegedly made Valorose that his benefits with defendant would be similar to those provided by FN Manufacturing, plaintiff's former employer, and (2) the LTD benefit paragraph in the February 28, 1989 letter. Plaintiff's reliance upon Valorose's alleged misrepresentation is factually misplaced. The record establishes that the SPD that he had received from FN Manufacturing did contain a preexisting condition for LTD benefits. Thus, he could not have been mislead by Valorose that there was no such condition under defendant's plan. Plaintiff's reliance upon the February 28, 1989 letter is, at best, curious. To the extent that he thereby concedes that the February 28th letter was referring to defendant's LTD plan, he undermines his common law claim that the letter provides an independent contractual basis for him to recover LTD benefits directly from defendant.

In any event, although he does not articulate it as such, plaintiff is at bottom asserting a claim that defendant is estopped from denying him disability benefits by having made to him representations that were inconsistent with the terms of the plan. The Fourth Circuit has repeatedly rejected this type of claim. *See, e.g., Elmore v. Cone Mills Corp.*, 6 F.3d 1028 (4th Cir.1993); *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 58–60 (4th Cir.1992); *Singer v. Black & Decker Corp.*, 964 F.2d 1449 (4th Cir.1992).[3]

## III.

Plaintiff's second claim is a common law one for breach of contract based upon

---

redress such violations or (ii) to enforce any provisions of this subchapter or terms of the plan...." 29 U.S.C. § 1132(a)(3). It appears that he utilizes this section, rather than § 1132(a)(1) (authorizing him to bring a suit for benefits due to him under the terms of a plan), because he seeks injunctive relief for the payment of continuing benefits.

**3.** In light of my ruling that plaintiff cannot establish reliance and prejudice as he must do, I need not decide two other defenses asserted by defendant to plaintiff's ERISA claim. I note, however, that neither of them appears persuasive.

First, defendant contends that even if plaintiff had relied upon the old SPD when he first became employed by defendant, by the time that he filed his claim the old SPD had been superseded by the new SPD which did contain a preexisting exclusion. Since unvested benefits can be modified or eliminated when a change is made for the overall benefit of the plan, *see Pierce v. Security Trust Life Ins. Co.*, 979 F.2d at 29; *McGann v. H & H Music Co.*, 946 F.2d 401 (5th Cir.1991), plaintiff argues, it follows *a fortiori* that the description in an incomplete or erroneous SPD can be changed to state fully and accurately the terms of the plan. Although there is some force in this logic, it can be reasoned with greater force that while an employee takes the risk that a benefits plan may be modified in the future as to participants, he may properly rely upon the accuracy of an SPD when he first decides to accept employment.

Second, defendant argues that even under the terms of the old SPD, plaintiff would not qualify for LTD benefits because he had not been employed by defendant for twelve consecutive months as required by the plan and stated in the old SPD. According to defendant, plaintiff was not a regular employee until February 28, 1989 and became disabled on February 6, 1990. Although there is substantial evidence in the record to support the finding made by the plan administrator that plaintiff did not become a regular employee until February 28, 1989 (including the facts that plaintiff identified his employment date as February 27, 1989 on his insurance enrollment forms and filed income tax returns indicating that he received non-employee income from defendant until March 1989 and taking certain deductions in connection therewith), the record is less clear as to the date on which defendant became disabled. Although plaintiff claimed successfully before the Social Security Administration that he became disabled on February 6, 1990 for the purpose of obtaining disability benefits, the record also shows that plaintiff continued working intermittently during March, May and June 1990. Thus, a genuine dispute seems to exist as to his actual date of disability.

the letter dated February 28, 1989 which he received from Axelrod. In reciting the benefits that plaintiff would receive, the letter stated in part: "Long Term Disability: pays 60% of salary after six months of disability (After one year of employment). Payable to age 70."

In opposing this claim defendant first argues that it is preempted by ERISA. It is, of course, well established that ERISA's preemption provision contained in 29 U.S.C. § 1144(a), is extremely broad. *See, e.g., Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 139, 111 S.Ct. 478, 483, 112 L.Ed.2d 474 (1990); *Pilot Life Ins. Co. v. Dedaux*, 481 U.S. 41, 47, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987); *Liberty Corp. v. NCNB National Bank of South Carolina*, 984 F.2d 1383 (4th Cir.1993). Courts have applied the provision to preempt any claims that provide alternative means for employees to collect benefits, *see Aetna Life Ins. Co. v. Borges*, 869 F.2d 142 (2d Cir.1989), any claims that are based on promises that would supplement an extant plan, *Smith v. Dunham–Bush, Inc.*, 959 F.2d 6 (2d Cir.1992), or any claims that would impact on the administration of the plan by creating "conflicting employer obligations in variable standards of recovery." *Holland v. Burlington Industries, Inc.*, 772 F.2d 1140, 1147 (4th Cir.1985). Recently, the Fourth Circuit has suggested that any agreement touching upon benefits of the type that are governed by ERISA—even a separate contract between a single corporate officer and his employer creating a corporate (rather than a plan) obligation—is preempted by ERISA. *See Biggers v. Wittek Indus., Inc.*, 4 F.3d 291, 296 (4th Cir.1993).

It is not entirely clear to me precisely how far the courts of appeal intend to go in restricting the right of employees and employers to negotiate employment contracts providing individualized benefit packages. It may be, as *Biggers* suggests, that they intend to go very far indeed, requiring that such claims be brought only under ERISA (without right of jury trial) or at least subjecting them to principles of federal common law (including a requirement of a clear, specific and express written agreement).[4] To thus extend the umbrella of ERISA would serve the important policy interests of preserving the actuarial soundness of benefit plans and preventing collusive agreements between employers and favored employees. *See Singer v. Black & Decker Corp.*, 964 F.2d at 1454 (Wilkinson, J., concurring).[5]

I need not resolve this ultimate issue here. Whether I were to consider plaintiff's claim under the February 28, 1989 letter as a statutory ERISA claim, as a claim under federal common law or as a claim under state common law, I am of the view that on the evidentiary record no reasonable fact-finder could find that the parties intended the letter to create a corporate obligation on the part of defendant to pay plaintiff LTD benefits beyond those provided by the LTD plan that defendant maintained through its insurer. It

**4.** For purpose of clarity of analysis, I should perhaps note that under the Fourth Circuit cases preemption does not necessarily result in extinguishment of a claim in two different senses. First, a claim may (1) be preempted by ERISA because it generally relates to a benefit plan, (2) not be actionable under ERISA itself yet (3) nevertheless be cognizable as a matter of federal common law if it supplements ERISA by providing a remedy as to a matter not directly touched upon by Congress. *See, e.g., Provident Life & Acc. Ins. Co. v. Walker*, 906 F.2d 985, 989–90 (4th Cir.), *cert. denied*, 498 U.S. 982, 111 S.Ct. 512, 112 L.Ed.2d 524 (1990). Second, a claim for individualized benefits not provided by an employer's general benefit plan may be actionable under Section 502(a) of ERISA itself if it supplements an employer's general benefit package and meets ERISA requirements. *Biggers* itself so holds since there the Fourth Circuit, while setting aside a jury verdict on a state common

law claim that the Court found to be preempted, remanded the case for decision by the Court under the "principles of ERISA." Although the Court did not articulate precisely what it meant by the "principles of ERISA," it may have been referring to cases such as *Donovan v. Dillingham*, 688 F.2d 1367 (9th Cir.1982) (en banc) where the elements of an ERISA statutory claim are defined.

**5.** I recognize that here plaintiff is not asserting a claim against a benefit plan but rather against his employer directly. However, protecting the financial health of employers (the sponsors of benefit plans) is of equally vital importance in assuring the long term continuance of the plans as are the policy interests enumerated by Judge Wilkinson in *Singer*. In this connection I note that plaintiff's claim in *Biggers* was also asserted directly against the employer.

is true that the term "insurance" is not used in the paragraph describing the LTD benefits being offered to plaintiff. However, that paragraph is sandwiched between two earlier paragraphs relating to life insurance and medical insurance and a subsequent paragraph related to a prescription drug program. Moreover, the word "pays" appearing immediately after the words "Long Term Disability:" implies an insurance policy that *pays* certain benefits. Similarly, the February 28th letter does not define "disability" and thus necessarily requires reference to an external source.

Several extrinsic facts confirm that this was the intended meaning of the clause. First, if plaintiff's present interpretation were correct, he would have been entitled to receive (if he had been employed long enough to meet the eligibility requirements of the ERISA plan) LTD benefits of 120% of his salary. Such a benefit package is facially unreasonable, particularly for a mid-level management employee. Second, plaintiff himself apparently did not contemporaneously understand the letter to have the meaning he now ascribes to it. He never asserted a claim directly against defendant until he had been unsuccessful in his efforts to recover benefits from defendants insurer. Third, plaintiff alleges that prior to his coming to work for defendant, Valorose told him that the benefits that defendant would provide were similar to those provided by FN Manufacturing (the prior employer of plaintiff and Valorose). Plaintiff does not suggest that FN Manufacturing had an LTD plan that would have provided him with a 120% of his salary. Fourth, at almost the same time that he received the February 28th letter plaintiff was filling out insurance enrollment forms that specifically related to and identified defendant's insured LTD plan. Under the circumstances plaintiff's contention that he believed that the February 28th letter conferred individualized LTD benefits upon him lacks all credibility.

## IV.

■ Plaintiff's final claim, based upon defendant's termination of his health benefits after settlement negotiations between the parties failed, is for intentional infliction of emotional distress. The legality and reasonableness of defendant's action in terminating the health benefits requires reference to ERISA. Thus, plaintiff's claim is preempted. *See Thomas v. Telemacanique, Inc.*, 768 F.Supp. 503 (D.Md.1991). In any event, one of the elements of a claim for intentional infliction of emotional distress is that the defendant's allegedly wrongful conduct was "extreme and outrageous." *See, e.g., Harris v. Jones*, 281 Md. 560, 566, 380 A.2d 611, 614 (1977); *Kentucky Fried Chicken Co. v. Weathersby*, 326 Md. 663, 680, 607 A.2d 8, 16 (1992). Here, although unfortunately the termination of plaintiff's health benefits has had devastating financial consequences for plaintiff and his wife, defendant did not terminate the benefits arbitrarily. To the contrary, it did not stop paying those benefits until in denying plaintiff's motion for a preliminary injunction to continue the benefits, I had ruled that the benefits could properly be terminated.

A separate order granting defendants' summary judgment motion is being entered herewith.

## ORDER

For the reasons stated in the memorandum entered herewith, it is, this 18th day of February 1994

ORDERED

1. Defendant's motion for summary judgment is granted; and

2. Judgment is entered in favor of defendant against plaintiff.