Patricia L. AYRES, et al., Plaintiffs,

v.

**NATIONAL BANK OF FREDERICKSBURG,**
Defendant.

Civ. A. No. 3:94CV327.

United States District Court,
E.D. Virginia,
Richmond Division.

Aug. 3, 1994.

Douglas Michael Nabhan, Robert Dean Perrow, Theodore J. Edlich, IV, Williams, Mullen, Christian & Dobbins, P.C., Richmond, VA, for plaintiffs.

Samuel Morton Brock, III, Daryl Eugene Webb, Jr., Mays & Valentine, Richmond, VA, for defendant.

## MEMORANDUM OPINION

SPENCER, District Judge.

THIS MATTER comes before the Court on the defendant's Motion to Dismiss and/or for Summary Judgment,[1] and Motion to Strike Jury Demand.[2] For the reasons stated herein, summary judgment will be granted in favor of the defendant. The preliminary injunction issued June 10, 1994, will be lifted, and the Order and Memorandum Opinion of the same date will be withdrawn.

## I.

The plaintiffs are 25 retired employees ("the Retirees") of The National Bank of Fredericksburg ("the Bank"). They filed this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, seeking a declaratory judgment and other relief requiring the Bank to continue to make health insurance premi-

um payments for the Retirees under the Bank's employee welfare benefit plan. In an Order and Memorandum Opinion dated June 10, 1994, the Court issued a preliminary injunction directing the defendant to continue its current practice of providing health insurance coverage, pending a trial on the merits. The defendant now seeks to have the case dismissed and the injunction lifted.

Under the plaintiffs' version of the facts, the Bank has paid in full all health insurance premiums for retirees of the Bank and their dependents since 1978. The Retirees claim the Bank told them that these benefits would be available for the duration of their lives. The promise allegedly was made to induce workers to become employed and to remain employed with the Bank.

On September 28, 1993, the Bank's Board of Directors passed a resolution pursuant to which the Bank's current retirees would not be permitted to participate in the Bank's health insurance plan after September 30, 1994. The Board of Directors further decided that the Bank would make no financial contribution toward the cost of health insurance for its retirees after March 31, 1994. These decisions were communicated to all retirees of the Bank by letters dated October 8, 1993. (Affidavit of John B. Daniel, ¶ 9.)

On February 22, 1994, the Board of Directors amended its decisions of September 28, 1994, by extending the time for participation by retirees in the Bank's health insurance plan and the time for which it would make a financial contribution to retiree health insurance coverage by one month in each case, or until October 31, 1995, and April 30, 1994, respectively. This decision was communicated to all retirees of the Bank on March 11, 1994. (Daniel Aff., ¶ 10.)

According to the plaintiffs, the Bank never told them that it reserved the right to terminate its payment of their health insurance. The Bank also allegedly never supplied them

1. Although this motion has been filed as a Motion to Dismiss, it is more appropriately termed a Motion to Dismiss and/or for Summary Judgment because the Court must consider the testimony presented at the hearing on the preliminary injunction. *See* Fed.R.Civ.P. 12(b) (if "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 ...").

2. Because of the Court's ruling on the first motion, the Motion to Strike Jury Demand will be dismissed as moot.

with a "summary plan description" of the pension plan as required by ERISA. The plaintiffs further claim that all of them live on a fixed income, which affects their ability to pay premiums. The amount each will be required to pay will vary.

Count I of the Complaint alleges a violation of an employee welfare benefit plan, under section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1). Count II seeks relief under the theory of promissory estoppel to the extent federal common law supplements ERISA.

At the hearing on the motion for a preliminary injunction, one of the Retirees testified that, in her former capacity as a Bank vice president for personnel, the Bank's president told her that all retirees were guaranteed lifetime medical insurance premium payments. She testified that she recognized the significance of his promise, and that she made the same promise on the Bank's behalf to other employees. In addition, although she once made premium payments on her spouse's policy, she testified that she dropped the policy in reliance on the Bank's lifetime guarantee. She and other Retirees, including a former vice president for operations, testified that not only did the defendant promise them lifetime premium payments, it acted consistently with the guarantee for 15 years, until it announced in October 1993 that the practice would cease.

In response to these allegations, the defendant submitted the affidavit of John B. Daniel, who is the Bank's current Vice President for Personnel. In the affidavit, Daniel states "the Bank has never made a promise, contract or other form of commitment to its employees or retirees that they would be provided free lifetime health insurance coverage under any circumstances." (Daniel Aff., ¶ 8)

One written document expressly reserved the right to terminate such benefits. Daniel states that "the Bank's Employee Handbook never contained a policy regarding health insurance benefits for the Bank's retirees until the one which was distributed in May 1992 which set forth a general policy regarding welfare, pension and other benefits for retirees which was approved by the Board of Directors." (Daniel Aff. ¶ 6) The relevant portion of the Employee Handbook that was distributed in May 1992 stated: "Employees who qualify for retirement under this policy become eligible for various welfare and pension benefits in accordance with the Bank's Retiree Benefits plan.... All benefit plans and programs are subject to amendment or termination, even after retirement, at the Bank's sole discretion." (*See* Exh. B.)

The Bank's attempted reservation of rights in 1992 notwithstanding, the plaintiffs testified that they relied on the defendant's promise. According to their evidence, that reliance included refraining from seeking other insurance at lower premiums and from seeking other employment. In addition, as stated earlier, at least one plaintiff dropped dual coverage in reliance on the guarantee. Moreover, former vice presidents in charge of personnel and operations explained that they assisted in formulating the policy and communicated it to other employees. Explaining the Bank's deliberative process, they testified that the lifetime guarantee was regarded as an attractive substitute for the low amount of the pension itself.

## II.

▮▮ Summary judgment is proper if, viewed in the light most favorable to the nonmoving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985). The essence of the inquiry that the court must make is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Summary judgment is proper "if the evidence is such that a reasonable jury could [not] return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510.

### III.

The Bank first argues that the plaintiffs cannot prevail on their claim for free lifetime health insurance benefits in the absence of a written plan instrument, complying with ERISA, which clearly and expressly establishes those rights. According to the Bank, employers may terminate "employee welfare benefit plans,"[3] such as this one, at will. The plaintiff responded to this argument at the preliminary injunction stage. It relied on *Keffer v. H.K. Porter Co.,* 872 F.2d 60 (4th Cir.1989), where the Fourth Circuit ruled that lifetime retirement benefits for retirees subject to a collective bargaining agreement survived the expiration of the agreement. However, the subsequent case of *Pierce v. Security Trust Life Ins. Co.,* 979 F.2d 23 (4th Cir.1992), presents compelling reasons for ruling in the Bank's favor.

In *Pierce,* twelve retired employees of the Security Trust Life Insurance Company ("Security") brought an action to contest an amendment which Security made to their ERISA plan ("the Plan"). In 1988, after the plaintiffs had retired, Security amended the ERISA plan to require the retiree employees to contribute, beginning as of January 1, 1989, a portion of the cost of their medical and hospital benefits plan.

Beginning in 1975, the Plan itself provided that the employer could modify, change or terminate benefits unilaterally. *Id.* at 24. Subsequently, the Plan was amended approximately 20 times, including an amendment in 1978 in which Security provided for free medical coverage to its retirees. Security never distributed the Plan to the retirees, but instead distributed a Summary Plan Description ("SPD") in 1980 that failed to advise the retirees that the benefits could be terminated unilaterally. *Id.* In 1984, it redistributed the SPD containing the requisite notification that the benefits could be terminated unilaterally.

The court of appeals ruled, *inter alia,* that because Security made changes only after the required notice was given to the retirees, "such benefits were terminable at will by the employer." *Id.* at 29. The court, relying on *Sutton v. Weirton Steel Div. of Nat'l Steel Corp.,* 724 F.2d 406 (4th Cir.), *cert. denied* 467 U.S. 1205, 104 S.Ct. 2387, 81 L.Ed.2d 345 (1984) and *Reichelt v. Emhart Corp.,* 921 F.2d 425 (2d Cir.), *cert. denied* 501 U.S. 1231, 111 S.Ct. 2854, 115 L.Ed.2d 1022 (1991), indicated that even if the notice had not been given in 1984, the result would remain the same because of the nature of the benefits involved:

> Under [*Sutton* ] and [*Reichelt* ], it is arguable that, since the medical benefits under the plan were not vested the employer could change such benefits without any prior notice of that right as a matter of law. This seems to be the purport of our language in *Sutton,* as previously quoted, and of the Second Circuit in *Reichelt,* also previously quoted. It is unnecessary for us, however, to reach that conclusion in this case.

*Pierce,* 979 F.2d at 30.

*Pierce* quoted language from *Sutton* and *Reichelt* that foreclose the relief sought in Count One of the retirees' action. In *Sutton,* the court stated:

> Under ERISA's vesting rules, only accrued benefits must be nonforfeitable. 29 U.S.C. § 1053(a). With respect to the issues raised by these appeals, ERISA defines an accrued benefit as an "annual benefit commencing at normal retirement age." 29 U.S.C. § 10002(23). The accrued benefits secured by ERISA do not encompass unfunded, contingent early retirement benefits or severance payments. The Act was not designed to prohibit modification of these ancillary benefits ... Rather, Congress believed that the "vesting of these ancillary benefits would seriously complicate the administration and increase the cost of plans whose primary function is

---

3. The term, "employee welfare benefit plan" is described in ERISA to include:

   any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer ... to the extent that such plan, fund or program was established or is

maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits ... 29 U.S.C. § 1002(1).

to provide retirement income." ... An employer may change such benefits without violating ERISA.

*Sutton,* 724 F.2d at 410.

Similarly, in *Reichelt,* the Second Circuit stated:

ERISA governs two types of employee benefit plans: those that provide for "pension" benefits, *see* 29 U.S.C. § 1002(2), and those that provide for "welfare" benefits, *see id.* § 1002(1). In recognition of the expense of maintaining and administering employee benefit plans, Congress structured ERISA to impose the most stringent requirements in connection with pension plans and left the employer with considerable flexibility with respect to welfare plans ... Thus, employee pension benefit plans are subject to elaborate accrual, vesting, and funding requirements. 29 U.S.C. §§ 1051–1085. On the other hand, welfare benefit plans, though subject to certain disclosure and fiduciary requirements, *see id.* §§ 1021–1031, 1101–1114, "are exempt from the more stringent ERISA requirements" ... and welfare benefits are thus unaccrued and nonvested.

Since severance benefits are welfare benefits and an employee's interest in a welfare benefit plan is not vested, the employer has no continuing obligation to provide severance benefits; under ERISA, the employer has the right at any time to amend or terminate a severance pay plan.

*Id.* at 429–30.

ERISA's distinction between pension plans and employee welfare benefit plans has been strictly enforced by other jurisdictions. *See,* e.g., *Young v. Standard Oil (Indiana),* 849 F.2d 1039 (7th Cir.), *cert. denied,* 488 U.S. 981, 109 S.Ct. 529, 102 L.Ed.2d 561 (1988); *Phillips v. Amoco Oil Co.,* 799 F.2d 1464, 1471 (11th Cir.1986), *cert. denied,* 481 U.S. 1016, 107 S.Ct. 1893, 95 L.Ed.2d 500 (1987). Therefore, even though the National Bank of Fredericksburg failed to provide notice to its retirees and employees that the lifetime insurance coverage was subject to being revoked unilaterally, the retirees are foreclosed from seeking relief under ERISA. Although the Retirees are sympathetic plaintiffs, *Pierce* is dispositive of this case.[4]

While conceding that *Pierce* presents a hurdle to the relief they seek, the Retirees argue that the Court should provide them with an opportunity to prove that the Bank agreed to vest its welfare benefit plan. Although cases from the Sixth Circuit generally support enforcement of agreements to vest welfare benefits, *see, e.g., In re White Farm Equipment Co.,* 788 F.2d 1186, 1193 (6th Cir.1986), such claims are disfavored in the Fourth Circuit. *See Sejman v. Warner–Lambert Co.,* 889 F.2d 1346, 1350 (4th Cir.), *cert. denied* 498 U.S. 810, 111 S.Ct. 43, 112 L.Ed.2d 19 (1990) ("Courts should hesitate to impose upon companies unwritten contractual liabilities."). In addition, neither the pleadings nor the evidence introduced at the preliminary injunction hearing indicated that the Bank agreed to waive its right under ERISA to unilaterally terminate employee welfare benefits. Although it remains unclear how estoppel principles might be used in the ERISA context, those principles cannot supersede the distinction Congress drew in the statute between pension benefits and em-

---

4. The plaintiffs rely on *Keffer* for the proposition that the Fourth Circuit has enforced contracts that provide for lifetime medical and life insurance benefits for retirees. Although *Keffer* did uphold such a claim under ERISA, it considered only whether an employer's obligation to provide benefits to its retirees continued beyond the expiration of a collective bargaining agreement. The court stated in *Keffer* that "the parties to the collective bargaining agreement realized that employees who are willing to forego current compensation in expectation of retiree benefits 'would want assurance that once they retire they will continue to receive such benefits regardless of the bargain reached in subsequent agreements.'" *Keffer,* 872 F.2d at 64 (quoting *Inter-* *national Union, United Automobile, Aerospace & Agricultural Implement Workers v. Yard–Man, Inc.,* 716 F.2d 1476, 1482 (6th Cir.1983)).

Although language in *Keffer* supports the plaintiffs' argument, the court's main concern was directed to enforcing the bargains struck in collective bargaining agreements between management and unions under the dictates of the Labor Management Relations Act. *See id.* at 63 ("all of the parties concerned fully anticipated that the Retirees' benefits would continue beyond the expiration of their collective bargaining agreement"). Because *Pierce* arises in a factual context more similar to the instant case, the Court must adhere to its reasoning.

ployee welfare benefits. *See Elmore v. Cone Mills Corp.*, 23 F.3d 855 (4th Cir.1994) (court equally divided on use of promissory estoppel); *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54 (4th Cir.1992) (oral representations cannot modify terms of written plan); *but see Sprague v. General Motors Corp.*, 857 F.Supp. 1182 (E.D.Mich.1994) (plaintiffs justified in relying on oral assurances of lifetime health care coverage).

### IV.

For the reasons hereinbefore stated, summary judgment will be granted in favor of the defendant. An appropriate Order shall issue.