Robert GABLE; Harvey Spies; John Foley; Eugene Foreman, on behalf of themselves and as representatives of a class of persons similarly situated, Plaintiffs–Appellants,

v.

SWEETHEART CUP COMPANY, INCORPORATED, a Delaware Corporation; Fort Howard Corporation, a Delaware Corporation; Howard Cup Corporation, a Delaware Corporation; Howard Cup Corporation Medical Plan, and its plan administrators, John Does 1 through 10, Defendants–Appellees,

and

Sweetheart Holdings, Incorporated, a Delaware Corporation; Sweetheart Cup Medical Plan, and its plan administrators, John Does 11 through 20, Defendants (Two Cases).

Nos. 94–1234, 94–1301.

United States Court of Appeals, Fourth Circuit.

Argued July 18, 1994.

Decided Sept. 13, 1994.

**ARGUED:** John Thomas Ward, Quinn, Ward & Kershaw, P.A., Baltimore, MD, for appellants. Charles Ross Diffenderffer, Miles & Stockbridge, Towson, MD, for appellees. **ON BRIEF:** Thomas Joseph Minton, Kathryn Miller Goldman, Quinn, Ward & Kershaw, P.A., Baltimore, MD, for appellants. Gary C. Duvall, Miles & Stockbridge, Towson, MD, for appellees.

Before WILKINSON and LUTTIG, Circuit Judges, and TRAXLER, United States District Judge for the District of South Carolina, sitting by designation.

Affirmed by published opinion. Judge WILKINSON wrote the opinion, in which Judge LUTTIG and District Judge TRAXLER joined.

## OPINION

WILKINSON, Circuit Judge:

The question before us is whether a company violated the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, by decreasing its retirees' medical benefits provided under an employee welfare benefit plan. We find that the company possessed a statutory right to amend or terminate the employee welfare benefit plan and that the plan documents in no way waived that right. Accordingly, we affirm the district court's grant of summary judgment to the company.

### I.

This case arises out of an employee welfare benefit plan established by Maryland Cup Corporation and its successors. In the 1950s, Maryland Cup contracted with John Hancock Insurance Company, which issued to Maryland Cup a "master policy" providing comprehensive medical and life insurance to all Maryland Cup employees, retirees, and their dependents.

In 1974, when ERISA was enacted, Maryland Cup filed the John Hancock master policy with the Department of Labor and thereby established an employee benefit plan known as "The Maryland Cup Corporation Medical Plan." Section T of the master policy, the "General Provisions" section, con-

tained the following "Modification and Reinstatement of Policy" clause:

This Policy may be amended or discontinued at any time by written agreement between the Company and the holder thereof without the consent of or notice to any employee or beneficiary or any other person having a beneficial interest in said Policy....

Plan participants did not receive personal copies of the master policy at that time, but did receive individual certificates of insurance, which stated that

[t]he Policy(ies) under which this certificate is issued may at any time be amended or discontinued by agreement between the Insurance Company and the Policyholder without the consent of or giving of notice to the Insured Person.

Since the plan has been in effect, the company has amended it many times; with each amendment, the company has distributed "inserts" to the individual certificates of insurance informing the plan participants of the latest revisions.

In addition to distributing the certificates, Maryland Cup also issued to its retiring employees a document known as Schedule II, which described the level of health care benefits that each individual employee would receive after retirement. The Schedule II forms informed the retiring employees that the company would "continue this Coverage for you during the remainder of your lifetime at company expense."

In 1983, Fort Howard Company acquired Maryland Cup and assumed responsibility for the company's employee welfare benefit plan. On October 1, 1985, Maryland Cup [1] converted the plan into a self-insured plan. All the substantive terms of the plan remained the same, however, and John Hancock Insurance Company retained responsibility for administering the amended plan. Maryland Cup advised all plan participants of the pending amendment in September 1985.

The official plan document for the 1985 amended plan, like the original master policy, contained a modification clause stating that

"[t]his Plan can be amended[,] modified or terminated at any time by action of the Employer...." In addition, the company inserted the following modification clause in all Schedule II documents distributed to retiring employees under the amended plan:

Whether or not medical coverage will be continued for you as a retiree, and at what level of benefits[,] will depend upon the particular plan provisions and Company policy in effect at any specific time in the future.

In 1986, the company distributed a detailed Summary Plan Description ("SPD") for the amended plan to all plan participants, including all retired employees. The SPD contained the same modification clause quoted above, and also informed the participants that

Maryland Cup Corporation reserves the right to modify, change or terminate the medical coverage for retirees at any time in the future, just as it does for active employees.

In 1989, Sweetheart Cup Company acquired Fort Howard/Maryland Cup. Faced with rising health care costs, Sweetheart Cup decided to make significant changes to the employee welfare benefit plan. The company notified all plan participants that, as of June 1, 1989, the plan would be amended to reduce benefits, increase deductibles, and require each participant to pay a portion of the insurance premiums.

In January 1990, several Maryland Cup retirees filed suit against Sweetheart Cup and its predecessors in federal district court, claiming that their benefits had vested at the time of their retirement and that the 1989 benefit reduction amendment therefore violated ERISA. The district court certified a class of plaintiffs including all of defendants' retired employees (and their beneficiaries) who retired before October 1, 1985, and were participants in the plan as of June 1, 1989. At summary judgment, the magistrate judge issued a report and recommendation finding that (1) the ERISA plan here unambiguously

---

1. After Fort Howard's acquisition of Maryland Cup, the company's name remained unchanged for a long period. We accordingly refer to the company under Fort Howard's control as Maryland Cup.

reserved to defendants the right to amend or terminate the employee benefits and therefore failed to demonstrate any intention to vest those benefits at retirement, and (2) defendants failed to provide plaintiffs with an SPD prior to October 1, 1985, but distributed an SPD in 1986 that adequately notified plaintiffs of defendants' right to amend the plan at any time.

In January 1994, the district court adopted the magistrate judge's report and recommendation, and granted summary judgment to defendants. The court stated, however, that this decision was subject to reconsideration upon any individual plaintiff's showing of reliance or prejudice caused by failure to receive the 1986 SPD or any other notification of defendants' right to amend the plan. Because no member of the plaintiff class attempted to make this showing within the requisite thirty-day period, the district court dismissed the case. Plaintiffs now appeal that ruling.

## II.

### A.

Plaintiffs' primary contention on appeal is that Sweetheart Cup violated ERISA by modifying the company's health insurance plan. Plaintiffs argue that they had a vested right to receive lifetime benefits after retirement, and that the company thus had no right to unilaterally change the level of their benefits.

■■■ We disagree. It is well-established that ERISA does not prohibit a company from terminating or modifying previously offered benefits that are not vested. *See Wise v. El Paso Natural Gas Co.,* 986 F.2d 929, 935 (5th Cir.1993); *Owens v. Storehouse, Inc.,* 984 F.2d 394, 397 (11th Cir.1993). Although ERISA contains a strict vesting requirement for pension benefits, it expressly exempts employee welfare benefit plans from that requirement. *See* 29 U.S.C. § 1051(1); *Sejman v. Warner–Lambert Co., Inc.,* 889 F.2d 1346, 1348 (4th Cir.1989). Accordingly, a plan participant's interest in welfare benefits is not automatically vested, and employers have a statutory right to "amend the terms of the plan or terminate it entirely."

*Biggers v. Wittek Indus., Inc.,* 4 F.3d 291, 295 (4th Cir.1993). Because the health insurance benefit plan at issue here constitutes an "employee welfare benefit plan" under ERISA, *see* 29 U.S.C. § 1002(1) (defining "employee welfare benefit plan" as any plan providing "medical, surgical, or hospital care or benefits, or benefits in the event of sickness"), the company possessed the right to change or terminate the medical benefits provided under the plan. *See Doe v. Group Hospitalization & Medical Servs.,* 3 F.3d 80, 84 (4th Cir.1993) ("the employer may modify or withdraw [health care] benefits at any time"); *Wise,* 986 F.2d at 935.

■■■ An employer may "waive[ ] its statutory right to modify or terminate benefits," however, by voluntarily undertaking an obligation to provide vested, unalterable benefits. *Id.* at 937; *see Boyer v. Douglas Components Corp.,* 986 F.2d 999, 1005 (6th Cir. 1993) ("the parties can agree to vest a welfare benefit plan"). Because such an obligation constitutes an extra-ERISA commitment, however, courts may not lightly infer the existence of an agreement to vest employee welfare benefits. *See Anderson v. Alpha Portland Indus., Inc.,* 836 F.2d 1512, 1517 (8th Cir.1988); *see also Howe v. Varity Corp.,* 896 F.2d 1107, 1110 (8th Cir.1990) (holding that courts may not infer an intent to vest from the "mere fact that employee welfare benefits continue in retirement"); *Wise,* 986 F.2d at 938 (holding that "silence" as to an employer's right to modify the plan does not "impliedly cede the right to later amend or discontinue coverage"). Rather, in recognition of ERISA's requirement that employee benefit plans be governed by written plan documents filed with the Secretary of Labor, *see* 29 U.S.C. §§ 1102(a)(1) & 1024(a)(1), any participant's right to a fixed level of lifetime benefits must be "found in the plan documents and must be stated in clear and express language." *Wise,* 986 F.2d at 937; *see Alday v. Container Corp. of Am.,* 906 F.2d 660, 665 (11th Cir.1990). Moreover, plaintiffs bear the burden of proving that their employer's ERISA plan contains a promise to provide vested benefits. *See Howe,* 896 F.2d at 1109; *Anderson,* 836 F.2d at 1517, 1521.

Plaintiffs in this case cannot meet their burden of proving that their health insurance benefits were vested under the Maryland Cup plan. Here, the John Hancock master policy constituted the relevant plan document governing plaintiffs' rights at the time of their retirement. An insurance policy may constitute the "written instrument" of an ERISA plan, *see Musto v. American General Corp.*, 861 F.2d 897, 900–01 (6th Cir.1988), and the company filed the master policy with the Secretary of Labor. Nothing in the John Hancock policy indicated that the plan participants' health insurance benefits would vest upon retirement or at any other time. To the contrary, it specifically reserved the company's right to modify the plan by stating that "[t]his Policy may be amended or discontinued at any time ... without the consent of or notice to any [plan participant]." Furthermore, the company retained its right to modify the plan when it changed the plan's funding mechanism in 1985; the amended plan document provided that "[t]his Plan can be amended[,] modified or terminated at any time by action of the Employer...." This express reservation of the company's right to modify or terminate the participants' benefits is plainly inconsistent with any alleged intent to vest those benefits. *See Anderson*, 836 F.2d at 1519. Therefore, we hold that the modification clause, standing alone, is more than sufficient to defeat plaintiffs' claim that the company provided vested benefits and thus waived its statutory right to modify or terminate the health benefit plan. *See Alday*, 906 F.2d at 662, 666 (rejecting plaintiffs' claim of vested lifetime benefits where the plan document contained a modification clause similar to the one at issue in the present case); *Moore v. Metropolitan Life Ins. Co.*, 856 F.2d 488, 490, 492–93 (2d Cir.1988) (same).

### B.

Despite this clear modification clause, plaintiffs nonetheless urge us to interpret the plan document as containing a vesting requirement. Specifically, appellants argue that the modification clause does not preclude vesting of their health benefits for two reasons. First, appellants maintain that because the clause provided that the *"Policy* may be amended or discontinued," it reserved only a right to change the particular insurance policy that the company purchased, not a right to change plan benefits in general. Second, appellants claim that the modification clause applied only to active employees, not to retired employees. Because documents other than the master policy, such as the Schedule IIs handed out to retiring employees, and testimony of Maryland Cup's former officers show that the company intended to provide "lifetime" benefits for retirees, plaintiffs conclude that the company could not modify their plan benefits.

We are not persuaded. First, the fact that the modification provision stated that the company may amend the "Policy" does not limit the company's amendment right, because the John Hancock master policy constituted the entirety of the company's welfare benefit plan. A company may establish an employee welfare benefit plan merely by purchasing a group policy for its employees, *see Madonia v. Blue Cross & Blue Shield of Va.*, 11 F.3d 444, 447 (4th Cir.1993), and the plan may consist of nothing but the purchased policy document, *see Musto*, 861 F.2d at 901. Therefore, Maryland Cup's reservation of its right to modify the policy was equivalent to a reservation of the right to modify plan benefits generally. *See id.* at 901–02 (holding that the employer had a right to amend the plan where the modification clause stated that "[t]his *policy* may be amended or changed at any time") (emphasis added).

Second, it is simply untrue that the modification clause at issue does not apply to retirees. To begin with, the modification clause itself provided that the right to modify applies to the rights of *all* plan participants, not just active employees; the clause permitted modification of the plan without consent of *"any* ... person having a beneficial interest in [the] Policy." (emphasis added). Moreover, the Maryland Cup plan, by its own terms, established that retirees are considered employees for purposes of interpreting the terms of the plan; section L of the master policy stated that if an employee retires, "his employment shall be deemed to

continue thereafter, for the purpose of this coverage, until terminated by his employer." Because section L further provided that an employee's insurance benefits may cease on "the date of termination of this Policy," it is apparent that the company's express right to make amendments applied to benefits of retirees. *See Musto*, 861 F.2d at 902 (holding that a modification clause applies to retirees as well as to employees where the plan indicates that retirees will be considered employees for the purposes of the plan). Accordingly, we find that the plan clearly provided that retirees' benefits are subject to the employer's right to modify or terminate the plan.

■■■■ In light of the fact that the master policy unambiguously reserved the company's right to modify or terminate the plan, we have no need to consider plaintiffs' extrinsic evidence in determining the extent of the company's rights and obligations under that plan. *See Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 57–58 (4th Cir.1992); *Howe*, 896 F.2d at 1110. In particular, the fact that Schedule II documents referred to retirees' benefits as "lifetime benefits" does not nullify the company's right to modify, because the Schedule IIs are informal communications that do not govern the company's obligations under an ERISA plan.[2] ERISA prohibits informal written or oral amendments of employee benefit plans, *see* 29 U.S.C. § 1102(b)(3); *Alday*, 906 F.2d at 665, and references to lifetime benefits contained in nonplan documents cannot override an explicit reservation of the right to modify contained in the plan documents themselves. *See id.* at 665–66 (holding that booklets sent to retiring employees referring to lifetime benefits cannot nullify the plan document's explicit reservation of the right to amend the plan); *Moore*, 856 F.2d at 493 (holding that communications speaking of "lifetime" benefits "at no cost" do not "constitute the kind of

misleading behavior" that overrides the plan documents' explicit reservation clause).

■■■■ As a matter of statutory policy, ERISA places great weight on the written terms of the formal plan documents. *See Coleman*, 969 F.2d at 56. Congress expressed this "emphatic preference for written agreements" in ERISA in order to establish predictability as to an employer's future obligations. *Id.* at 58 (quoting *Degan v. Ford Motor Co.*, 869 F.2d 889, 895 (5th Cir. 1989)); *see Moore*, 856 F.2d at 492. Here, the official plan document—the John Hancock master policy—unambiguously set out the company's right to terminate or modify the plan at any time. Were we to hold that other communications could nullify this express written term, plan documents would no longer serve to ensure predictability as to employers' future liabilities, and "consequently, substantial disincentives for even offering such plans would be created." *Id.* at 492.

■■■ There is a further reason why the explicit reservation of a right to amend in official plan documents cannot be overridden by informal communications. Such communications often contain explanations of plan benefits and tend to sound promissory by their very nature. While these explanations may state a company's current intentions with respect to the plan, they cannot be expected to foreclose the possibility that changing financial conditions will require a company to modify welfare benefit plan provisions at some point in the future. In this case, the plan participants knew of this contingency because they received individual certificates of insurance that expressly informed them that the plan "may at any time be amended or discontinued . . . without the consent of or giving of notice to the Insured Person." Benefit descriptions cannot be translated into guarantees that benefits will

---

**2.** Appellants contend that Schedule II documents are not *informal* communications, but must be considered *"official* plan documents" that accurately describe the terms of the plan. It is clear, however, that the Schedule IIs do not satisfy ERISA's requirements for plan documents. 29 U.S.C. § 1022 requires official plan descriptions to contain, *inter alia,* "the plan's requirements respecting eligibility for participation and bene-

fits; . . . [and] the source of financing of the plan and the identity of any organization through which benefits are provided. . . ." 29 U.S.C. § 1022(b). The Schedule IIs at issue here do not describe the plan's terms in general or define eligibility requirements. Accordingly, they may not qualify as ERISA plan documents. *See Alday*, 906 F.2d at 665.

never be altered, especially where, as here, the descriptions fall well short of the "precise language denying the right to withdraw benefits" that courts require to find the creation of a vested right. *Wise,* 986 F.2d at 938. Therefore, we hold that the plaintiff retirees' benefits did not vest, and that the company retained its statutory right to modify or terminate the plan at any time.

## III.

Plaintiffs next contend that even if the company possessed the right to modify or terminate the plan, it failed to provide proper notice of its amendment right to plan participants. ERISA requires employers to give every plan participant a summary plan description that is "sufficiently accurate and comprehensive to reasonably apprise [plan] participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a)(1). Section 1022(b) further requires that an SPD state the "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." 29 U.S.C. § 1022(b). According to plaintiffs, § 1022(b) requires employers to warn plan participants of any possibility of decrease in their benefits by including a specific modification clause in the SPD. Because the district court found that Maryland Cup did not distribute any SPD containing a modification clause prior to the plaintiffs' retirement in 1985, plaintiffs contend that the company is estopped from claiming a right to amend their benefits.

We cannot accept this argument. The first flaw in plaintiffs' reasoning lies in the assumption that § 1022(b) requires employers to expressly notify plan participants of their statutory right to amend or terminate the plan. An SPD is designed to inform plan participants of the terms of the particular plan that the employer has established, not to educate them regarding all aspects of ERISA law applicable to employee benefit plans in general. It follows that § 1022(b) merely requires employers to explain in an

SPD how an individual employee gains or loses "eligibility under *then existing,* current terms of the Plan," *Wise,* 986 F.2d at 935 (emphasis added)—*i.e.,* that employees may lose their coverage if they miss their premium payments or if they are fired from their job for misconduct. ERISA does not require SPDs to specifically address "the possibility that those terms might later be changed, as ERISA undeniably permits" for all employee benefit plans in general. *Id.; see also Pierce v. Security Trust Life Ins. Co.,* 979 F.2d 23, 30 (4th Cir.1992) (per curiam) ("[I]t is arguable that, since the medical benefits under the plan were not vested the employer could change such benefits without any prior notice of that right as a matter of law. This seems to be the purport of our [case law]."). We hold therefore that an employer's failure to notify plan participants of its amendment right does not preclude the employer from properly exercising that right.[3]

Second, even if § 1022(b) did require an employer to provide explicit notice of its right to amend or terminate the plan, we would still find that the company did not violate ERISA. As this court has recently held, any notice requirement that may be contained in § 1022(b) can be fulfilled by distributing an SPD containing a modification clause at any time before the modification or termination occurs. *See Pierce,* 979 F.2d at 28, 30. In *Pierce,* the employer issued an SPD without a modification clause during plaintiffs' employment; however, because the company later distributed a revised SPD with a modification clause four years before it implemented a decrease in benefits, the court held that the company provided adequate notice to plaintiffs of the possibility of such a decrease. *See id.* Here, although Maryland Cup did not issue SPDs prior to the retirement date of any of the plaintiffs, it did distribute an SPD immediately after it changed the funding mechanism of the plan in 1985, well before the challenged 1989 benefit reduction occurred. This SPD contained an unambiguous modification clause stating that "Maryland Cup Corporation reserves

---

**3.** We must note that our holding that ERISA does not require notice of the employer's *right* to make modifications in no way relieves employers of the obligation to provide "notice to plan participants of [*actual*] changes in a plan's provisions and an opportunity after such notice for the participant to take action." *Rodriguez v. MEBA Pension Trust,* 872 F.2d 69, 74 (4th Cir.1989).

the right to modify, change or terminate the medical coverage for retirees at any time in the future...." The SPD further explained that "[w]hether or not medical coverage will be continued for you as a retiree, and at what level of benefits, will depend upon ... Company policy in effect at any specific time in the future." Because the company issued this SPD four years before implementing the challenged decrease in benefits, the SPD was more than sufficient to put plaintiffs on notice of the possibility of future amendment or termination of their benefits. *See id.; see also Wise,* 986 F.2d at 933, 936–37 (holding that an employer provided sufficient notice where it issued an SPD containing a modification clause for the first time in May 1985 and then made changes to plan benefits in October 1985).[4]

 In an effort to avoid the binding effect of the 1986 SPDs, plaintiffs now contend that they never received any SPD. In order to state a claim that a faulty plan description (including non-receipt of a proper SPD) prohibits a company from exercising its right to modify a plan, a plaintiff "must show some significant reliance upon, *or* possible prejudice flowing from," the lack of notice of an accurate description of the terms of the plan. *Aiken v. Policy Management Sys. Corp.,* 13 F.3d 138, 141 (4th Cir.1993). Here, the district court gave the plaintiffs an opportunity to make that reliance/prejudice showing; in its opinion, the court stated that its decision to grant summary judgment to the company was subject to reconsideration upon any individual plaintiff's showing of detriment stemming from failure to receive the 1986 SPD, and gave the plaintiff class thirty days to make such a showing. No member of the plaintiff class, however, presented any

evidence of reliance or prejudice or even attempted to verify that he did not receive the SPD. Because courts may not infer the existence of detrimental reliance or prejudice without some affirmative evidence to that effect, *see Anderson,* 836 F.2d at 1520, we hold that plaintiffs failed to carry their burden of proving that the 1986 SPD was insufficient to provide proper notice of the company's right to modify or terminate the plan.

## IV.

We recognize the real hardship that changes in employee benefit plans can visit upon individuals who have worked many years for a company. The enactment of ERISA, however, required Congress to strike a difficult balance between employee rights and available employer resources. In passing ERISA, Congress determined that requiring employers to provide vested employee welfare benefits "would seriously complicate the administration and increase the cost of plans whose primary function is to provide retirement income." H.R.Rep. No. 807, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.C.C.A.N. 4639, 4670, 4726; S.Rep. No. 383, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.C.C.A.N. 4890, 4935. Congress accordingly rejected vesting requirements for welfare benefit plans and instead accorded employers the flexibility to make future modifications of such plans "as inflation, changes in medical practice and technology, and the costs of treatment dictate." *Owens,* 984 F.2d at 398; *see Moore,* 856 F.2d at 492 (noting that "unstable variables prevent accurate predictions of future needs and costs" involved in employee welfare benefit plans). In this case, an employer provided a generous medical benefit plan to its active and

---

4. Plaintiffs contend that the 1986 SPD was insufficient to provide proper notice because it was a description of an ERISA plan that was separate and different from the Maryland Cup plan to which they belonged. According to plaintiffs, the company established a new plan in October 1985 when it converted the Maryland Cup plan into a self-funded plan, and the 1986 SPD relating to that new plan cannot affect their rights under the old plan. We find this argument meritless. In 1985, the company merely changed the funding mechanism for the plan. It did not change any of the benefit terms, and it even notified retirees that there would be "no change" in their plan

benefits. The post–1985 plan was clearly a *revised* plan, not a *new* plan, and the 1986 SPD thus provided adequate notice of the company's right to modify plaintiffs' plan benefits.

Moreover, the argument that the plan terminated in 1985 is one that is fraught with greater danger for the retirees in this case than an argument of plan continuation. A terminated plan might leave plaintiffs with no benefits because, as we have noted, their benefits have not vested and they have failed to establish any statutory violation of ERISA on the part of the company in this case.

retired employees in reliance on this well-established, statutory right to make future modifications to the plan, and even expressed its understanding of this modification right in its plan documents and SPDs. Were we to hold that the company was nonetheless bound by the original terms of the plan and prohibited from making any amendments, we would strip employers of the protection that Congress intended to provide them and accordingly "discourage employers from offering any insurance at all." *Owens,* 984 F.2d at 398 n. 5 (citing *Adams v. Avondale Indus., Inc.,* 905 F.2d 943, 947 (6th Cir.1990)); *Sejman,* 889 F.2d at 1349 (stating that requiring the vesting of severance payments would "encourage such employers to forego severance payments altogether"); *Moore,* 856 F.2d at 492 (holding that vesting would "decrease protection for future employees and retirees"). Accordingly, we hold that the district court properly granted summary judgment to Sweetheart Cup in this case.

The judgment of the district court is

*AFFIRMED.*