UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

<table>
<tr>
<td>

JOYCE P. WEBSTER,
*Plaintiff,*

and

GEORGIA V. BETHEA,
*Plaintiff-Appellant,*

v.

BLACK & DECKER (U.S.)
INCORPORATED, d/b/a Black &
Decker, Incorporated, d/b/a The
Black & Decker Corporation,
*Defendant-Appellee,*

and

METROPOLITAN LIFE INSURANCE
COMPANY, d/b/a Met Disability,
d/b/a MetLife, Incorporated,
*Defendant.*

</td>
<td>No. 01-1946</td>
</tr>
</table>

Appeal from the United States District Court
for the Middle District of North Carolina, at Durham.
N. Carlton Tilley, Jr., Chief District Judge.
(CA-97-1036-1)

Argued: February 27, 2002

Decided: April 10, 2002

Before WIDENER and KING, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

---

Affirmed by unpublished per curiam opinion.

**COUNSEL**

**ARGUED:** Kathleen G. Sumner, LAW OFFICES OF KATHLEEN G. SUMNER, Greensboro, North Carolina, for Appellant. Susanna Knutson Gibbons, POYNER & SPRUILL, Raleigh, North Carolina, for Appellee. **ON BRIEF:** David L. Woodard, POYNER & SPRUILL, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

**OPINION**

PER CURIAM:

Appellant Georgia V. Bethea initiated this ERISA civil action in 1997 against Black & Decker (U.S.), Incorporated ("Black & Decker"), maintaining that her claim for disability benefits had been improperly denied. The district court for the Middle District of North Carolina granted summary judgment to Black & Decker, thereby affirming the denial of Ms. Bethea's benefits claim. Ms. Bethea has appealed the court's ruling, asserting that the award of summary judgment was inappropriate. As explained below, we find her assertions to be without merit, and we affirm.

I.

A.

Georgia Bethea began working for Black & Decker as a temporary employee in December 1983. In April 1984, she became a permanent employee, and she thereby became eligible for group insurance benefits offered through Black & Decker. As such, in May 1984, she completed the necessary enrollment forms to qualify for those benefits, including an application for The Black & Decker Long Term Disability Plan (the "Plan"). Ms. Bethea continued her employment with

Black & Decker through June 1992, remaining a covered participant under the Plan during that period.

In June 1992, after being diagnosed with discognenic disease cervical and lumbar, post anterior cervical discectomy, carpal tunnel syndrome, high blood pressure, occipital neuralgia, depression, chronic pain, and thyroid condition, Ms. Bethea left her Black & Decker employment and filed a claim for disability benefits under the Plan.[1] After review, her claim was approved by Black & Decker's Plan Administrator, and, in December 1992, according to the terms of the Plan, Black & Decker commenced paying Ms. Bethea long-term disability benefits ("LTD Benefits").[2] The LTD Benefits continued through January 23, 1997; however, the Plan then ceased its payments to Ms. Bethea because the Plan Administrator determined that she was no longer disabled under the terms of the Plan.

B.

The Plan is an employee welfare benefit plan within the meaning of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq. Black & Decker funds the Plan, and it also acts as Plan Administrator. The Plan grants, inter alia, the Plan Manager (an individual, normally Black & Decker's Vice President of Benefits, designated by the Plan Administrator), "the sole and absolute discretion" to "[i]nterpret the [P]lan" and to "decide all questions concerning the [P]lan," including benefit eligibility. The Plan further provides that "[t]he determination of whether or not a Participant has a Disability or continues to have a Disability shall be made by the Plan Manager, or . . . by the Claims Administrator."[3] Decisions adverse to plan par-

---

[1] The terminology "discognenic disease cervical and lumbar" denotes a disorder involving a disk situated between two vertebrae in the neck and in the back. The term "occipital neuralgia" refers to a clinical complex of pain, tenderness, tightness, and vasomotor instability which is the result of neck trauma.

[2] Under the terms of the Plan, Ms. Bethea received weekly indemnity benefits between June 1992 and December 1992, while her LTD Benefits claim was being considered and prior to its approval.

[3] The Plan authorizes the Plan Administrator to delegate to a Claims Administrator certain administrative functions. In this case, Metropolitan Life Insurance Company served as the Claims Administrator.

ticipants are appealable to an Appeals Committee, which is comprised of the Plan Manager and "one or more persons designated by the Plan Administrator to serve on such Committee." The decisions of the Appeals Committee are non-appealable as an administrative matter and are binding on all parties.

Under the Plan, eligibility for LTD Benefits is predicated upon a plan participant having a non-excluded disability. The Plan defines "disability," during the first thirty months after a claim is filed, as "the complete inability . . . of a Participant *to engage in his regular occupation with the Employer*."[4] (emphasis added). After thirty months of disability, however, the Plan redefines the term, in a more restrictive manner, to mean the "complete inability . . . of a participant to engage in *any gainful occupation or employment with any employer* for which the Employee is, as of his Disability Date, reasonably qualified by education, experience, or training." (emphasis added). The Plan provides that LTD Benefits shall terminate, inter alia, when the "Plan Manager determines . . . [that] the Disabled Participant no longer satisfies the [Plan's] definition of Disability." In addition, the Plan conditions the continued payment of LTD Benefits upon a plan participant, "at least once each year and . . . at any other reasonable time," submitting "medical and non-medical documentation" to the Plan Administrator and agreeing to undergo "an independent medical examination . . . by one or more qualified physicians selected by the Plan Manager."

## C.

In May 1996, as required by the Plan, Ms. Bethea's physician, Dr. Pantelakos, submitted medical documentation to the Plan Administrator which concluded that Ms. Bethea remained totally disabled from working in any occupation (the "Pantelakos Medical Opinion"). At approximately the same time, the Plan Manager requested that Ms. Bethea undergo an independent medical examination, which was conducted on May 1, 1996, by a Dr. Ciliberto, an orthopaedic surgeon. In June 1996, Dr. Ciliberto issued his report on Ms. Bethea's condi-

---

[4]The thirty-month period runs from the time the claim is filed, not from the time it is allowed. Therefore, in Ms. Bethea's case, the thirty-month period began running in June 1992.

tion (the "Ciliberto Medical Opinion"), concluding that she had "significant discognenic disease, [and] she certainly should not be employed in work that requires strenuous exertional efforts." Dr. Ciliberto, however, further opined that Ms. Bethea "on a physical basis is qualified for a wide scope of supervisory and very light work activities." Thereafter, the Plan ordered a vocational assessment of Ms. Bethea's medical records. This assessment was performed on July 26, 1996, and it identified twenty-five jobs that Ms. Bethea was able to perform (the "Vocational Assessment").

In August 1996, the Claims Administrator determined that Ms. Bethea no longer had a disability under the Plan because she did not suffer from a complete inability to engage in any gainful occupation with any employer.[5] Accordingly, on August 27, 1996, it notified Ms. Bethea of this determination, and that her "claim for Long Term Disability benefits [would terminate] effective October 1, 1996."

In September 1996, Dr. Pantelakos wrote a "to whom it may concern" letter advising that he considered the denial of Ms. Bethea's LTD Benefits "unrealistic," stating that "[t]he only type of work that [Ms. Bethea] could do would be . . . for two or three hours a day at a sedentary desk-type job" (the "Pantelakos Letter"). Thereafter, in October 1996, Ms. Bethea appealed the termination of her LTD Benefits under the Plan. Upon consideration of her appeal, the Plan Manager, on January 23, 1997, notified Ms. Bethea that the Plan Administrator had decided to uphold the initial decision to terminate her LTD Benefits because she was not disabled under the Plan.

### D.

Having exhausted her appeal rights under the Plan, Ms. Bethea, on October 6, 1997, filed suit in the Middle District of North Carolina, pursuant to 29 U.S.C. § 1132, against Black & Decker, Metropolitan Life Insurance Co. (MetLife), and CIGNA Healthcare of NC, Inc.

---

[5]The parties agree that starting in January 1995 the Plan's post-thirty-month definition of disability applied to Ms. Bethea, i.e., to be disabled Ms. Bethea had to have the "complete inability . . . to engage in any gainful occupation or employment with any employer for which the Employee is . . . reasonably qualified."

(CIGNA), alleging, inter alia, that her LTD Benefits had been improperly terminated. Thereafter, Black & Decker filed a counter-claim against Ms. Bethea, seeking to recover an overpayment of bene-fits under the terms of the Plan. On June 21, 2001, with cross-motions for summary judgment pending, the district court granted Black & Decker's motion for summary judgment, awarded Black & Decker the sum of $8,338.76 on its counterclaim, and dismissed, with the par-ties' agreement, Ms. Bethea's case against MetLife and CIGNA. *Bethea v. Black & Decker (U.S.) Inc.*, Judgment, 1:97CV1036 (M.D.N.C. June 29, 2001).

On June 29, 2001, Ms. Bethea filed a timely notice of appeal. We possess jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

### A.

Before turning to the merits of Ms. Bethea's appeal, we must first address and determine the applicable standards of review for the issues raised here. Generally, decisions made by administrators of ERISA plans are subject to de novo review by the courts. *Firestone Tire & Rubber Co. v. Burch*, 489 U.S. 101, 115 (1989); *see also Bedrick v. Travelers Ins. Co.*, 93 F.3d 149, 152 (4th Cir. 1996). When, however, an ERISA plan provides the plan administrator with discretionary authority to interpret the terms of the plan and to make coverage determinations, the administrator's decisions are reviewed by the courts for abuse of discretion only. *Firestone*, 489 U.S. at 115; *Bedrick*, 93 F.3d at 152. That standard is further modified if the plan administrator operates under a conflict of interest, for in such cases we have recognized the propriety of reviewing courts "lessen[ing] the deference normally given under [the abuse of discretion] standard of review . . . to the extent necessary to counteract any influence unduly arising from the conflict." *Feder v. Paul Revere Life Ins. Co.*, 228 F.3d 518, 522 (4th Cir. 2000).

These standards of review apply to review by a district court of a plan administrator's coverage determinations in an ERISA case, and they are also applicable on appellate review. That is, we review de novo a court's award of summary judgment in an ERISA case, apply-

ing the same standards of review the district court utilized in reaching its determination. *Ellis v. Metro. Life Ins. Co.*, 126 F.3d 228, 232 (4th Cir. 1997).

### B.

The Plan provides Black & Decker, as Plan Administrator, with "the sole and absolute discretion" to "[i]nterpret the [P]lan" and to "decide all questions concerning the [P]lan." Accordingly, we may not disturb a coverage determination made by Black & Decker in its capacity as Plan Administrator, so long as its decision is reasonable. *Feder*, 228 F.3d at 522; *Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335, 342 (4th Cir. 2000).

In this case, both parties acknowledge that Black & Decker performed its duties as Plan Administrator under a conflict of interest; that is, Black & Decker administered the Plan and at the same time funded it. As such, while the abuse of discretion standard remains applicable to Black & Decker's coverage determinations, we must reduce the level of deference to be accorded its decisions "to the degree necessary to neutralize any untoward influence resulting from the conflict." *Bailey v. Blue Cross & Blue Shield of VA*, 67 F.3d 53, 56 (4th Cir. 1995); *see also Ellis*, 126 F.3d at 233.

### III.

On appeal, Ms. Bethea maintains that the district court erred by awarding summary judgment to Black & Decker. She makes two contentions of error in this regard: first, she asserts that Black & Decker, as Plan Administrator, abused its discretion by concluding that her medical condition failed to satisfy the Plan's definition of disability; and second, she maintains that an abuse of discretion occurred when she was not offered what the Plan termed Rehabilitation Employment. We examine each of these contentions in turn.

### A.

First, Ms. Bethea contends that Black & Decker, as Plan Administrator, abused its discretion in terminating her LTD Benefits. Specifi-

cally, she alleges that the Plan Administrator acted unreasonably by determining that she was not disabled under the terms of the Plan. In support of her position, Ms. Bethea submitted evidence to the district court which was not contained in the administrative record.[6] We, however, cannot take cognizance of this additional evidence because, under the abuse of discretion standard, we assess the reasonableness of a plan's administrator's decision according to the evidence available when the decision was made. *Sheppard & Enoch Pratt Hosp., Inc. v. Travelers Ins. Co.*, 32 F.3d 120, 125 (4th Cir. 1994).

In this case, the administrative record contains the following: (1) six attending physicians' statements of functional capacity dating from February 1993 to November 1995, all of which conclude that Ms. Bethea is totally disabled from any occupation; (2) a letter and accompanying report dated January 4, 1993, from Ms. Bethea's physical therapist stating that "Ms. Bethea would not be able to return to her previous position at Black and Decker;" (3) the Pantelakos Medical Opinion; (4) the Ciliberto Medical Opinion; (5) the Vocational Assessment; and (6) the Pantelakos Letter. In light of this evidence, Ms. Bethea's position on appeal is essentially that the Plan Administrator acted unreasonably by relying on the Ciliberto Medical Opinion and the Vocational Assessment, instead of crediting the opinions of her treating physicians in support of her position, especially that of Dr. Pantelakos.

In support of this contention, Ms. Bethea first suggests that the Ciliberto Medical Opinion is flawed because it cites no specific jobs that she was capable of performing. This point lacks merit, however, because we have previously found no flaw in a plan administrator's reliance on medical reports of similar specificity. *See Elliott v. Sara Lee Corp.*, 190 F.3d 601, 608 (4th Cir. 1999) (affirming plan administrator's denial of disability benefits based on medical reports concluding that recipient could "perform some type of sedentary work").

---

[6]For example, Ms. Bethea seeks to use a Social Security Administration determination letter on disability benefits as evidence that she is disabled under the Plan. This letter, however, was not part of the administrative record presented to the Plan Administrator.

Next, she asserts that the Plan Administrator abused its discretion in determining that she was not disabled under the terms of the Plan, especially when the Pantelakos Medical Opinion and the Pantelakos Letter indicated otherwise. It is well-established, however, that "it is not an abuse of discretion for a plan fiduciary to deny . . . benefits where conflicting medical reports were presented." *Id.* at 606. In fact, we have recognized that it is the Plan Administrator's responsibility to resolve conflicting medical assessments. *Booth*, 201 F.3d at 345. In this case, Black & Decker resolved the conflicting medical assessments in the administrative record. In so doing, it decided to rely on the Ciliberto Medical Opinion and the Vocational Assessment, which, although adverse to Ms. Bethea, were more detailed than the Pantelakos Medical Opinion and the Pantelakos Letter, and they were prepared by independent professionals.

Finally, Ms. Bethea suggests that the Plan Administrator abused its discretion in denying her LTD Benefits because she had been disabled under the terms of the Plan for more than thirty months. In essence, she contends that once Black & Decker determined that she was disabled under the Plan, it was estopped from altering its decision. It is well-established, however, that no vested right to benefits accrues under an employee welfare benefit plan absent a clearly stated obligation to this effect in the plan's policies. *Gable v. Sweetheart Cup Co., Inc.*, 35 F.3d 851, 855 (4th Cir. 1994). The terms of the Plan under which Ms. Bethea received LTD Benefits do not create any vested benefit right. In fact, the opposite is true. The Plan explicitly requires the annual submission of evidence to the Plan Administrator to substantiate the continued existence of a disability, and it provides for the cessation of LTD Benefits whenever such evidence fails to do so. Accordingly, Ms. Bethea's contention on this point is without merit.

B.

Ms. Bethea also maintains that the Plan Administrator abused its discretion when she was not offered Rehabilitation Employment under the Plan. Ms. Bethea, however, failed to raise this contention in her appeal to the Appeals Committee. Accordingly, we need not consider this issue because "permitting a district court to examine evidence outside the administrative record would open the door to the anomalous conclusion that a plan administrator abused its discretion

by failing to consider evidence not before it." *Taft v. Equitable Life Assurance Soc.*, 9 F.3d 1469, 1471 (9th Cir. 1993).[7]

IV.

For the foregoing reasons, we affirm the decision of the district court. *Bethea v. Black & Decker (U.S.) Inc.*, Judgment, 1:97CV1036 (M.D.N.C. June 29, 2001).

*AFFIRMED*

---

[7]Were we to consider the merits of Ms. Bethea's assertion regarding Rehabilitation Employment, we nevertheless would view it as lacking merit. The Plan provides that "Rehabilitation Employment shall [cease] at the end of twenty-four months, or when the . . . Disability ceases." In this case, Ms. Bethea concedes that she received disability benefits under the Plan for more than twenty-four months. As such, by the terms of the Plan, Black & Decker was not required to offer her Rehabilitation Employment.