Filed: March 20, 2012

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 11-1206
(1:06-cv-02805-MBS)

NOORALI SAM SAVANI,

        Plaintiff - Appellant,

    v.

WASHINGTON SAFETY MANAGEMENT SOLUTIONS, LLC, f/k/a
Westinghouse Safety Management Solutions, LLC; WESTINGHOUSE
SAFETY MANAGEMENT SOLUTIONS, LLC PENSION PLAN; PAUL HARPER,
as Trustee of Westinghouse Safety Management Solutions LLC
Pension Plan; LEO SAIN, as Trustee of Westinghouse Safety
Management Solutions LLC Pension Plan; PRES RAHE, as Trustee
of Westinghouse Safety Management Solutions LLC Pension
Plan; WASHINGTON SAFETY MANAGEMENT SOLUTIONS, LLC PENSION
PLAN; WASHINGTON GROUP INTERNATIONAL, INCORPORATED; RALPH
DISIBIO, as director of Washington Safety Management
Solutions LLC; PAUL GREFENSTETTE, as Director of Washington
Safety Management Solutions LLC; ROBERT PEDDE, as Director
of Washington Safety Management Solutions LLC; AMBROSE
SCHWALLIE, as Director of Washington Safety Management
Solutions LLC; ROGER ALLEN, as Members of the Administrative
Committee of Westinghouse Safety Management Solutions LLC
Pension Plan formerly Benefits Committee of Westinghouse
Safety Management Solutions LLC Pension Plan; JULIE BROWN,
as Members of the Administrative Committee of Westinghouse
Safety Management Solutions LLC Pension Plan formerly
Benefits Committee of Westinghouse Safety Management
Solutions LLC Pension Plan; DAVE HOLLAN, as Members of the
Administrative Committee of Westinghouse Safety Management
Solutions LLC Pension Plan formerly Benefits Committee of
Westinghouse Safety Management Solutions LLC Pension Plan;
DELOYD CAZIER, as Members of the Administrative Committee of
Westinghouse Safety Management Solutions LLC Pension Plan
formerly Benefits Committee of Westinghouse Safety
Management Solutions LLC Pension Plan; WSMS PENSION PLAN,
f/k/a Westinghouse Savannah River Company-Bechtel Savannah
River Inc Pension Plan, f/k/a Westinghouse Safety Management

Solutions, LLC Pension Plan, f/k/a Washington Safety Management Solutions, LLC Pension Plan,

Defendants – Appellees,

and

WASHINGTON SAVANNAH RIVER COMPANY'S PENSION PLAN; WASHINGTON SAVANNAH RIVER COMPANY, LLC, f/k/a Westinghouse Savannah River Company LLC,

Defendants.

─────────────

O R D E R

─────────────

The Court amends its opinion filed March 20, 2012, as follows:

On the cover sheet, district court information section -- the name of "Margaret B. Seymour, District Judge" is deleted and is replaced by "Henry F. Floyd, District Judge."

For the Court – By Direction

/s/ Patricia S. Connor
Clerk

2

<u>UNPUBLISHED</u>

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 11-1206

NOORALI SAM SAVANI,

Plaintiff - Appellant,

v.

WASHINGTON SAFETY MANAGEMENT SOLUTIONS, LLC, f/k/a
Westinghouse Safety Management Solutions, LLC; WESTINGHOUSE
SAFETY MANAGEMENT SOLUTIONS, LLC PENSION PLAN; PAUL HARPER,
as Trustee of Westinghouse Safety Management Solutions LLC
Pension Plan; LEO SAIN, as Trustee of Westinghouse Safety
Management Solutions LLC Pension Plan; PRES RAHE, as Trustee
of Westinghouse Safety Management Solutions LLC Pension
Plan; WASHINGTON SAFETY MANAGEMENT SOLUTIONS, LLC PENSION
PLAN; WASHINGTON GROUP INTERNATIONAL, INCORPORATED; RALPH
DISIBIO, as director of Washington Safety Management
Solutions LLC; PAUL GREFENSTETTE, as Director of Washington
Safety Management Solutions LLC; ROBERT PEDDE, as Director
of Washington Safety Management Solutions LLC; AMBROSE
SCHWALLIE, as Director of Washington Safety Management
Solutions LLC; ROGER ALLEN, as Members of the Administrative
Committee of Westinghouse Safety Management Solutions LLC
Pension Plan formerly Benefits Committee of Westinghouse
Safety Management Solutions LLC Pension Plan; JULIE BROWN,
as Members of the Administrative Committee of Westinghouse
Safety Management Solutions LLC Pension Plan formerly
Benefits Committee of Westinghouse Safety Management
Solutions LLC Pension Plan; DAVE HOLLAN, as Members of the
Administrative Committee of Westinghouse Safety Management
Solutions LLC Pension Plan formerly Benefits Committee of
Westinghouse Safety Management Solutions LLC Pension Plan;
DELOYD CAZIER, as Members of the Administrative Committee of
Westinghouse Safety Management Solutions LLC Pension Plan
formerly Benefits Committee of Westinghouse Safety
Management Solutions LLC Pension Plan; WSMS PENSION PLAN,
f/k/a Westinghouse Savannah River Company-Bechtel Savannah
River Inc Pension Plan, f/k/a Westinghouse Safety Management

Solutions, LLC Pension Plan, f/k/a Washington Safety Management Solutions, LLC Pension Plan,

Defendants – Appellees,

and

WASHINGTON SAVANNAH RIVER COMPANY'S PENSION PLAN; WASHINGTON SAVANNAH RIVER COMPANY, LLC, f/k/a Westinghouse Savannah River Company LLC,

Defendants.

---

Appeal from the United States District Court for the District of South Carolina, at Aiken. Henry F. Floyd, District Judge. (1:06-cv-02805-MBS)

---

Argued: January 26, 2012                    Decided: March 20, 2012

---

Before WILKINSON, GREGORY, and KEENAN, Circuit Judges.

---

Reversed and remanded by unpublished per curiam opinion. Judge Keenan wrote a dissenting opinion.

---

**ARGUED:** Stanley G. Jackson, JACKSON LAW OFFICES, PC, Augusta, Georgia, for Appellant. H. Douglas Hinson, ALSTON & BIRD, LLP, Atlanta, Georgia, for Appellees. **ON BRIEF:** Gray T. Culbreath, COLLINS & LACY, PC, Columbia, South Carolina; Emily Seymour Costin, ALSTON & BIRD, LLP, Washington, D.C., for Appellees.

---

Unpublished opinions are not binding precedent in this circuit.

2

PER CURIAM:

Noorali "Sam" Savani brought this action under the Employee Retirement Income Security Act ("ERISA") § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) (2006), claiming that the termination of an early retirement pension supplement by Washington Safety Management Solutions ("WSMS") violated ERISA's anti-cutback and notice provisions. Because the plain language of the WSMS pension plan ("the Plan") includes the early retirement supplement in its calculation of accrued benefits, we must reverse the grant of summary judgment to WSMS and remand for further proceedings consistent with this opinion.

I.

Savani was an employee of Westinghouse Savannah River Company ("WSRC") in 1997 when WSMS was formed. At its inception, WSMS recruited a number of WSRC employees, including Savani, to transfer to the newly formed company. WSMS held meetings at which WSRC employees were informed of the employee benefit plans available to newly transferred employees. From the date of his transfer in 1997 until his retirement in 2005, Savani participated in the Plan.

The Plan, prior to amendments, provided in relevant part: "'Accrued Benefit' means, as of any date of determination, the normal retirement Pension computed under Section 4.01(b) . . .

3

less the WSRC Plan offset as described in Section 4.13, plus any applicable supplements as described in Section 4.12 . . . ." The Plan further provided for early retirement benefits: "The early retirement Pension shall be a deferred Pension beginning on the first day following the Member's Normal Retirement Date and . . . shall be equal to his Accrued Benefit. However, the Member may elect to receive an early retirement Pension beginning before his Normal Retirement Date . . . ." Finally, the Plan described supplemental benefits:

> 4.12 Supplemental Benefits
>
> > (a) If a Member who:
> >
> > > (i) otherwise satisfies the requirements for a Pension under this Plan; and
> > >
> > > (ii) has at least one year of service with WSMS; and
> > >
> > > (iii) transferred to the Plan from an Affiliated Employer on or before January 1, 1998 or transfers to the Plan from WSRC; and
> > >
> > > (iv) retires before his Normal Retirement Age from active service on or after October 1, 1998,
> > >
> > > he shall be entitled to a monthly supplement (which shall commence with the first Pension payment made under the Plan on account of such retirement and the last payment shall be in the month preceding the Member's attainment of Normal Retirement Age) equal to the following: [omitted]
> >
> > (b) If a Member who:
> >
> > > (i) otherwise satisfies the requirements for a Pension under this Plan;

4

         (ii) has at least one year of service with WSMS; and

        (iii) transferred to the Plan from an Affiliated Employer on or before January 1, 1998 or transfers to the Plan from WSRC; and

        (iv) either retires from active service on or after October 1 1998 or dies on or after October 1, 1998 and immediately prior to his death would be entitled to or is receiving an early retirement Pension under the Plan,

he shall be entitled to a $200 monthly supplement commencing at his attainment of Normal Retirement Age, which shall continue after such Member's death to such Member's spouse, if then living, for such spouse's lifetime.

On December 28, 2004, the Plan's benefits committee[1] amended the Plan to eliminate § 4.12(a), which granted a $700 monthly benefit to Plan members electing to take early retirement on or after January 1, 2005. The Plan's actuary recommended this amendment because of his concern that the Plan may fail discrimination testing and jeopardize Plan beneficiaries' favorable tax treatment. This action was not communicated to Plan participants or beneficiaries for nearly seven months.

Contrary to the committee's amendment, Savani received an "Early Retirement Benefit Calculation Estimate" in early 2005 that included both § 4.12 supplements. Savani retired from WSMS

---

[1] The benefits committee was vested with "all powers necessary to discharge its duties," including the power "[t]o approve Plan amendments" under Article 7.01 of the Plan and the "discretion to interpret the Plan" under Article 7.06.

on or about April 30, 2005, believing that he would be entitled to a $700 per month supplement until he reached age sixty-five.

On July 29, 2005, WSMS mailed letters to employees who had retired in 2005, or were eligible to do so, and to those who had transferred from WSRC, stating that § 4.12(a) of the Plan had been eliminated and they would no longer receive the $700 monthly supplement. However, Savani continued to receive payments of the $700 benefit until June 8, 2006. At that time, Savani received a letter from WSMS stating that he had incorrectly received the $700 monthly benefit for thirteen months and requesting reimbursement of $9,100 within twenty-two days.

Savani originally filed a class action complaint in the Court of Common Pleas for Aiken County, South Carolina. After WSMS removed the action to federal court, Savani filed a first amended class action complaint ("Amended Complaint") alleging four counts. The district court rightly dismissed count one of Savani's claim for benefits under ERISA for failure to exhaust administrative remedies.[2]

---

[2] The district court also properly dismissed count two on the grounds that a party may not request simultaneous relief under both ERISA, § 502(a)(1)(B) and § 502(a)(3), Korotynska v. Metro. Life Ins. Co., 474 F.3d 101, 107 (4th Cir. 2006), and state law counts three (estoppel) and four (breach of fiduciary duty) on the basis of preemption by ERISA, Griggs v. E.I. DuPont De Nemours & Co., 237 F.3d 371, 378 (4th Cir. 2001).

Savani proceeded to exhaust his administrative remedies by appealing to the Plan's benefits committee. After the benefits committee denied Savani's request for benefits, the district court reopened the case only as to count one, which the court had previously construed as a claim for benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B). On June 12, 2009, the parties filed cross-motions for summary judgment. The district court granted summary judgment in favor of WSMS, holding that the committee did not abuse its discretion in denying Savani's request for benefits and that deletion of § 4.12(a) from the Plan did not violate the anti-cutback or notice provisions of ERISA. On March 3, 2011, Savani timely filed this appeal.

## II.

## A.

This Court reviews de novo a district court's ruling on a motion for summary judgment. United McGill Corp. v. Stinnett, 154 F.3d 168, 170 (4th Cir. 1998). However, in an appeal under ERISA, the Court must use the same standard that governed the district court's review of a plan administrator's decision. Williams v. Metro. Life Ins. Co., 609 F.3d 622, 629-30 (4th Cir. 2010). Although ERISA is silent on the standard of review for benefit denials challenged under § 1132(a)(1)(B), a de novo standard applies "unless the benefit plan gives the

7

administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," in which case we review the decision for abuse of discretion. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).

The Plan at issue gives broad authority to the committee, granting it "total and complete discretion to interpret the Plan." However, "even as an ERISA plan confers discretion on its administrator to interpret the plan, the administrator is not free to alter the terms of the plan or to construe unambiguous terms other than as written." Colucci v. Agfa Corp. Severance Pay Plan, 431 F.3d 170, 176 (4th Cir. 2005), abrogated on other grounds by Champion v. Black & Decker (U.S.), Inc., 550 F.3d 353 (4th Cir. 2008). "An administrator's discretion never includes the authority 'to read out unambiguous provisions' contained in an ERISA plan, and to do so constitutes an abuse of discretion." Blackshear v. Reliance Standard Life Ins. Co., 509 F.3d 634, 639 (4th Cir. 2007) (quoting Colucci, 431 F.3d at 176).

While the Plan's grant of authority requires us to evaluate the committee's decision under an abuse-of-discretion standard, we have held that the abuse-of-discretion standard under ERISA is less deferential to administrators than the arbitrary and capricious standard. Evans v. Eaton Corp. Long Term Disability Plan, 514 F.3d 315, 322 (4th Cir. 2008). A reviewing court will

8

reverse or remand an ERISA administrator's discretionary decision if it is not reasonable, although not necessarily irrational, if it is not the result of a deliberate, principled reasoning process supported by substantial evidence, or if it does not reflect careful attention to the language of the plan and ERISA itself. Id. (citing Firestone, 489 U.S. at 109-11; Booth v. Wal-Mart Stores, Inc., 201 F.3d 335, 341-42 (4th Cir. 2000); Bernstein v. CapitalCare, Inc., 70 F.3d 783, 788 (4th Cir. 1995)).

B.

Savani alleges that the committee's deletion of § 4.12(a) from the Plan violated ERISA's anti-cutback statute and notice requirements and that the amended Plan's elimination of the $700 early retirement benefit should be unenforceable against him. In denying Savani's request for benefits, the committee found that the anti-cutback statute was not violated because the $700 benefit was not an "accrued benefit" within the meaning of ERISA. Our decision turns on whether the $700 benefit was included in the "accrued benefit" as defined by the Plan, ERISA, and applicable regulations. Because the plain, unambiguous language of the WSMS Plan contemplates inclusion of both § 4.12 supplements in its definition of "accrued benefit," the committee abused its discretion in denying Savani's request for benefits.

9

ERISA's anti-cutback statute provides that "[t]he accrued benefit of a participant under a plan may not be decreased by an amendment of the plan . . . ." 29 U.S.C. § 1054(g)(1) (2010). To determine whether WSMS violated this provision, we must determine what benefits may be accrued. ERISA defines "accrued benefit" as ". . . the employee's accrued benefit determined under the plan and . . . expressed in the form of an annual benefit commencing at normal retirement age . . . ." 26 U.S.C. § 411(a)(7)(A)(i) (2010). We have recognized that this definition is "a signpost, directing us to look at the terms of the plan at issue." Bd. of Trs. of the Sheet Metal Workers' Nat'l Pension Fund v. Comm'r, 318 F.3d 599, 602-03 (4th Cir. 2003).[3]

Under the Plan, the definition of "accrued benefit" contemplates the possibility that the $700 supplement can be included in the total accrued benefit calculation. Plan § 1.01

---

[3] In Sheet Metal Workers', we also held that the only textual limitation imposed by ERISA on the definition of "accrued benefit" was that it must be "expressed in the form of an annual benefit commencing at normal retirement age." 318 F.3d at 602. However, we did not discuss the definition of "accrued benefit" in the context of early retirement benefits which, by their definition, cannot commence at normal retirement age. While we have held that unfunded, contingent early retirement benefits or severance payments are not secured by ERISA itself, see Pierce v. Security Trust Life Ins. Co., 979 F.2d 23 (4th Cir. 1992), the drafters of a retirement plan may choose to define any benefits as accrued or vested, and thereby trigger ERISA's protections.

defines "accrued benefit" as the "normal retirement Pension . . . less the WSRC offset . . . plus any applicable supplements as described in § 4.12 . . . ." Simply put, prior to the Plan's amendment, a beneficiary's accrued benefit was calculated by an equation; the accrued benefit equaled the retiree's pension, less a defined offset, plus applicable § 4.12 supplements.

WSMS argues that the Plan's use of the qualifier "applicable" allowed the benefits committee to delete the $700 supplement without violating ERISA. ERISA administrators have discretion to interpret terms that are ambiguous in the sense that they give rise to at least two different, but reasonable, interpretations. Colucci, 431 F.3d at 176. Further, we may not upset the benefit committee's interpretation of the Plan unless it was an abuse of discretion. WSMS concedes that the term "applicable" could reasonably be interpreted as imposing only the eligibility factors contained in § 4.12. Still, it contends that the term "applicable" is ambiguous, and the benefits committee was given discretion to resolve this ambiguity by reasonably interpreting it as categorically excluding the $700 supplement from the accrued benefits equation.

However, ignoring the plain language of the Plan's terms was not within the committee's discretion. Before the December 2004 amendment, § 4.12 included exactly two supplements: the $700 early retirement benefit described in § 4.12(a) and the

11

$200 lifetime supplement described in § 4.12(b). The Plan explicitly defines "accrued benefit" as including "applicable supplements." The plurality of that term, when considered in light of the fact that only two supplements were included in § 4.12, mandates that each of the supplements was capable of being "applicable" under some circumstance. Any interpretation to the contrary, including that of the benefits committee, is inconsistent with the plain language of the plan. Because there is no reasonable alternative interpretation of the term "applicable," it is not ambiguous. The committee did not have discretion to read out this unambiguous provision of the Plan, and therefore abused its discretion in finding that the $700 supplement could never be applicable and in denying Savani's claim.

It should be noted that our holding is based on the specific language of the WSMS Pension Plan. Stand-alone, ancillary welfare benefits generally are not independently protected by ERISA. See Pierce, 979 F.2d 23. Here, however, the Plan plainly incorporated both supplements into its definition of "accrued benefit." Regardless of their classification as accrued or ancillary, welfare or pension benefits, the supplements' inclusion in the plain terms of the Plan's accrued benefit calculation necessarily meant that any

12

change to the amount or existence of a § 4.12 supplement constituted a change to an "accrued benefit."

## III.

The focus of both the district court's decision and the appeal was the characterization of the supplements as accrued benefits. On that issue, we hold that the Plan's clear terms include the § 4.12(a) supplement in the definition of accrued benefits. We therefore reverse the district court's grant of summary judgment to WSMS and remand the case for further proceedings consistent with this opinion.

<u>REVERSED AND REMANDED</u>

BARBARA MILANO KEENAN, Circuit Judge, dissenting:

I would affirm the judgment of the district court for the reasons well-articulated in its very thorough opinion. Accordingly, I respectfully dissent.