**UNPUBLISHED**
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 13-2512**

NOORALI SAM SAVANI, individually and on behalf of others
similarly situated; ROBERT P. TAYLOR, JR., individually and
on behalf of others similarly situated,

Plaintiffs - Appellees,

v.

URS PROFESSIONAL SOLUTIONS, LLC, f/k/a Westinghouse Safety
Management Solutions, LLC, f/k/a Washington Safety
Management Solutions, LLC; URS PROFESSIONAL SOLUTIONS
PENSION PLAN, f/k/a Washington Safety Management Solutions,
LLC Pension Plan, f/k/a WSMS Pension Plan; URS ENERGY &
CONSTRUCTION, INC., f/k/a Washington Group International,
Inc.; ROGER ALLEN, as Trustee and Member of the Benefits now
Administrative Committee of URS Professional Solutions
Pension Plan; JULIE TSCHIDA BROWN, as Trustee and Member of
the Benefits now Administrative Committee of URS
Professional Solutions Pension Plan; DAVE HOLLAN, as Trustee
and Member of the Benefits now Administrative Committee of
URS Professional Solutions Pension Plan; DELOYD CAZIER, as
Trustee and Member of the Benefits now Administrative
Committee of URS Professional Solutions Pension Plan,

Defendants – Appellants,

and

WASHINGTON SAVANNAH RIVER COMPANY, LLC, f/k/a Westinghouse
Savannah River Company, LLC; WESTINGHOUSE SAFETY MANAGEMENT
SOLUTIONS, LLC PENSION PLAN; PAUL HARPER, as Trustee and
Member of the Benefits now Administrative Committee of URS
Professional Solutions Pension Plan; LEO SAIN, as Trustee of
Westinghouse Safety Management Solutions, LLC Pension Plan;
PRES RAHE, as Trustee of Westinghouse Safety Management
Solutions, LLC Pension Plan; WASHINGTON SAVANNAH RIVER
COMPANY'S PENSION PLAN; RALPH DISIBIO, as director of
Washington Safety Management Solution, LLC;

PAUL GREFENSTETTE, as Director of Washington Safety Management Solutions, LLC; ROBERT PEDDE, as Director of Washington Safety Management Solutions, LLC; AMBROSE SCHWALLIE, as Director of Washington Safety Management Solutions, LLC; WSMS PENSION PLAN, f/k/a Westinghouse Savannah River Company-Bechtel Savannah River Inc Pension Plan, f/k/a Westinghouse Safety Management Solutions, LLC Pension Plan, f/k/a Washington Safety Management Solutions, LLC Pension Plan; WASHINGTON SAFETY MANAGEMENT SOLUTIONS, LLC; WASHINGTON SAFETY MANAGEMENT SOLUTIONS, LLC PENSION PLAN; WASHINGTON GROUP INTERNATIONAL, INC.,

Defendants.

---

Appeal from the United States District Court for the District of South Carolina, at Aiken. J. Michelle Childs, District Judge. (1:06-cv-02805-JMC)

---

Argued: September 16, 2014          Decided: November 17, 2014

---

Before WILKINSON, GREGORY, and KEENAN, Circuit Judges.

---

Affirmed by unpublished opinion. Judge Gregory wrote the opinion, in which Judge Wilkinson and Judge Keenan joined.

---

**ARGUED**: H. Douglas Hinson, ALSTON & BIRD, LLP, Washington, D.C., for Appellants. Stanley G. Jackson, JACKSON LAW OFFICES, Aiken, South Carolina, for Appellees. **ON BRIEF**: Emily S. Costin, ALSTON & BIRD, LLP, Washington, D.C.; Gray T. Culbreath, GALLIVAN, WHITE & BOYD, P.A., Columbia, South Carolina, for Appellants.

---

Unpublished opinions are not binding precedent in this circuit.

---

GREGORY, Circuit Judge:

Noorali "Sam" Savani filed this class action under the Employee Retirement Income Security Act ("ERISA"), § 502(a)(1)(B), 29 U.S.C. § 1132 (a)(1)(B)(2006), claiming that Washington Safety Management Solutions, LLC's ("WSMS")[1] termination of an early retirement pension supplement violated ERISA's anti-cutback provision. As we held in the first appeal of this case, the "clear terms" of the WSMS Pension Plan (the "Plan") "include the [early retirement pension supplement] in the definition of 'accrued benefit.'" Savani v. Wash. Safety Mgmt. Solutions, LLC (Savani I), 474 F. App'x 310, 316 (4th Cir. Mar. 20, 2012) (per curiam) (unpublished). In this second appeal, WSMS argues that it may lawfully eliminate that early retirement pension benefit as to another employee, Robert Taylor, and a similarly situated subset of the class (defined below). We again hold that the unambiguous terms of the Plan clearly include the pension benefit at issue within the Plan's definition of "accrued benefit," and that WSMS may not lawfully eliminate the benefit. We therefore affirm the grant of summary judgment to the plaintiffs-appellees.

---

[1] WSMS is now called URS Professional Solutions, LLC, and both WSMS and the appellees' previous employer, Westinghouse Savannah River Company ("WSRC"), are wholly owned subsidiaries of a company called URS Energy & Construction. For ease of reference and consistency with this Court's prior opinion, this memorandum refers only to WSMS and WSRC.

3

While Savani was the focus of the first appeal, Taylor and the subclass now take center stage. Much of the relevant background is set forth in great detail in Savani I, 474 F. App'x at 312-14, and is repeated below to the extent necessary.

Taylor, like Savani, was an employee of the Westinghouse Savannah River Company ("WSRC") in 1997 when WSMS was formed. "At its inception, WSMS recruited a number of WSRC employees, including Savani [and Taylor], to transfer to the newly formed company." Id. at 312. Taylor and the other WSRC employees "were informed of the employee benefit plans available to newly transferred employees." Id. Taylor was then and remains a participant in the Plan.

Prior to a 2004 amendment, the Plan provided in relevant part: "'Accrued Benefit' means, as of any date of determination, the normal retirement Pension computed under Section 4.01(b) . . . less the WSRC Plan offset as described in Section 4.13, plus any applicable supplements described in Section 4.12 . . . ." Additionally, the Plan provided that an "early retirement Pension shall be a deferred Pension beginning on the first day following the Member's Normal Retirement Date and . . . shall be equal to his Accrued Benefit. However, the Member may elect to receive an early retirement Pension

4

beginning before his Normal Retirement Date. . . ." Finally, the Plan described the following supplemental benefit:

> 4.12 Supplemental Benefits
>
> (a) If a Member who:
>
> (i) otherwise satisfies the requirements for a Pension under this Plan; and
>
> (ii) has at least one year of service with WSMS; and
>
> (iii) transferred to the Plan from an Affiliated Employer on or before January 1, 1998 or transfers to the Plan from WSRC; and
>
> (iv) retires before his Normal Retirement Age from active service on or before October 1, 1998,
>
> he shall be entitled to a monthly supplement (which shall commence with the first Pension payment under the Plan on account of such retirement and the last payment shall be in the month preceding the Member's attainment of Normal Retirement Age) equal to the following: [omitted][2]

"On December 28, 2004, the Plan's benefits committee amended the Plan to eliminate § 4.12(a), which granted a $700 monthly benefit to Plan members electing to take early retirement on or after January 1, 2005." Savani I, 474 F. App'x at 313. Later, on January 3, 2006, the benefits committee further amended the Plan, effective December 31, 2005 ("the 2005 Amendment"). Among other things, the 2005 Amendment included the following provision: "Notwithstanding anything to the

_____

[2] As discussed in our first opinion, § 4.12(b) of the Plan sets forth an additional $200 benefit payable upon reaching Normal Retirement Age. The $200 benefit is not at issue for purposes of the current appeal.

5

contrary in this Plan, a Member's Accrued Benefit shall be 'frozen' as of December 31, 2005 and shall not increase thereafter." Further, it provided: "Notwithstanding anything to the contrary in this Plan, effective December 31, 2005, no additional Credited Service will be awarded or earned under the Plan for any purpose. In other words, all Credited Service will be 'frozen' as of December 31, 2005." The 2005 Amendment also "added the following sentence at the end" of § 1.13 of the Plan: "Although the Plan is frozen as of December 31, 2005, an Employee shall continue to earn Eligibility Service in accordance with the terms of the Plan for purposes of determining eligibility for certain benefits and eligibility for a vested Pension."

During the first appeal of this case, Savani successfully challenged the 2004 elimination of § 4.12(a) as a violation of ERISA's anti-cutback provision. See id. at 316 ("[W]e hold that the Plan's clear terms include the § 4.12(a) supplement in the definition of accrued benefits."). The 2005 Amendment was not directly at issue at that time.

Upon remand, the district court certified Savani's case as a class action. Savani is the lead plaintiff for the class, which is defined to be:

> Employees of Washington Safety Management Solutions, LLC, formerly Westinghouse Safety Management Solutions, LLC [collectively "WSMS"] who (1) are

6

members of the WSMS Plan, (2) have at least one year of service with WSMS, and (3) transferred to the Plan from an Affiliated Employer as defined in § 1.02 of the Plan on or before January 1, 1998, or transferred to the Plan from Washington Savannah River Company, LLC, formerly, Westinghouse Savannah River Company, LLC [collectively, "WSRC"].

During the course of the district court proceedings, WSMS "opposed paying certain members of the above class who after December 31, 2005 have or may have become eligible for § 4.12(a) WSMS [Plan] benefits as related to freeze of benefits as of December 31, 2005." The appellees therefore moved to add Taylor as a party and subclass representative, and the district court granted the motion. Thus, Taylor is the lead plaintiff of the subclass, which is defined to be:

All members of the Class defined above who, as of December 21, 2005, either (1) did not have 15 total years of service with WSMS or an Affiliated Employer as defined in § 1.02 of the Plan, or (2) was not 50 years of age, or (3) did not meet the 25 years of service and age 45 but less than 50 years of age requirements for an Optional Retirement Pension as defined in § 4.04 of the WSMS Plan.

On July 31, 2012, the parties filed cross motions for summary judgment on the issue of whether the 2005 Amendment resulted in the lawful elimination of the § 4.12(a) benefit for Taylor and the members of the subclass. In considering the parties' motions, the district court observed that the 2005 Amendment permitted Plan members to continue to earn Eligibility Service years in order to determine the members' "eligibility

7

for certain benefits and eligibility for a vested Pension." In light of the unambiguous language of the 2005 Amendment, as well as this Circuit's prior holding that the elimination of the § 4.12(a) supplement violated ERISA's anti-cutback provision, the district court granted summary judgment in favor of Taylor and the subclass members and held that they are entitled to receive the supplement. WSMS subsequently filed a motion to remand the matter to the Plan's benefits committee, or in the alternative, for the district court to reconsider its summary judgment ruling. WSMS argued that the district court had "erred by not remanding the case back to the Committee for an initial interpretation of the language of the 2005 Amendment." It argued in the alternative that the district court had misconstrued the nature of the parties' dispute. The district court denied the motion, reasoning that it had interpreted unambiguous Plan language, and that remand "would be futile because a different interpretation of this clear language would be an abuse of the committee's discretion." On December 13, 2013, WSMS timely filed this appeal.

## II.

On appeal, the WSMS argues that Taylor and the members of the subclass are not eligible for the § 4.12(a) benefit because they did not satisfy the requisite eligibility requirements for

8

the benefit prior to the effective date of the 2005 Amendment. Alternatively, the WSMS argues that the district court erred by failing to remand this matter to the Plan's benefits committee.

**A.**

We review a court's order granting summary judgment de novo. United McGill Corp. v. Stinnett, 154 F.3d 168, 170 (4th Cir. 1998). And "[i]n an appeal under ERISA, we . . . employ[] the same standards governing the district court's review of the plan administrator's decision." Williams v. Metro. Life. Ins. Co., 609 F.3d 622, 629 (4th Cir. 2010). Where "the plan expressly grants the plan administrator discretionary authority to construe the provisions, the administrator's decision is reviewed for abuse of discretion." United McGill Corp., 154 F.3d at 170 (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)). "Under this deferential standard, 'the administrator or fiduciary's decision will not be disturbed if it is reasonable, even if this court would have come to a different conclusion independently.'" Id. (quoting Ellis v. Metro. Life Ins. Co., 126 F.3d 228, 232 (4th Cir. 1997)). Here, the Plan grants the benefits committee "total and complete discretion to interpret the Plan." But "even as an ERISA plan confers discretion in its administrator to interpret the plan, the administrator is not free to alter the terms of the plan or to construe unambiguous terms other than as written." Colucci

9

v. Agfa Corp. Severance Pay Plan, 431 F.3d 170, 176 (4th Cir. 2005), abrogated on other grounds by Champion v. Black & Decker (U.S.), Inc., 550 F.3d 353 (4th Cir. 2008). The discretionary authority to interpret a plan "is not implicated . . . [where] the terms of the plan itself are clear." Kress v. Food Emp'rs Labor Relations Ass'n, 391 F.3d 563, 567 (4th Cir. 2010).

**B.**

WSMS argues that because Taylor and the members of the subclass did not satisfy the age and service eligibility requirements for the § 4.12(a) benefit prior to the effective date of the 2005 Amendment, they never accrued the benefit. Thus, the argument goes, the elimination of the benefit for Taylor and the subclass does not constitute an unlawful cutback of accrued benefits. This argument does not square with our previous holding in this case that the unambiguous language of the Plan's definition of accrued benefit includes the § 4.12(a) benefit. Savani I, 474 F. App'x at 315-16.

Under the law of the case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." TFWS, Inc. v. Franchot, 572 F.3d 186, 191 (4th Cir. 2009) (quoting United States v. Aramony, 166 F.3d 655, 661 (4th Cir. 1991)). Accordingly,

10

> once the decision of an appellate court establishes the law of the case, it "must be followed in all subsequent proceedings in the same case in the trial court or on a later appeal [] unless: (1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice."

Id. (quoting Aramony, 166 F.3d at 661) (alteration in original). Here, the parties have not presented substantially different evidence, we are aware of no new controlling authority, and WSMS has not argued that our prior decision was clearly erroneous. Therefore, our analysis must be guided by our prior holding that the $700 monthly supplement set forth in § 4.12(a) of the Plan is an accrued benefit.

There is no dispute that an employer sponsored retirement plan cannot eliminate an "accrued benefit" without violating ERISA's anti-cutback provision. 29 U.S.C. § 1054(g)(1). Importantly, "ERISA defines 'accrued benefit' as '. . . the employee's accrued benefit determined under the plan and . . . expressed in the form of an annual benefit commencing at normal retirement age . . . .'" Savani I, 474 F. App'x at 315 (quoting 26 U.S.C. § 411(a)(7)(A)(i) (2010)). This statutory definition of an accrued benefit is "a signpost, directing us to look at the terms of the plan at issue." Bd. of Trs. of the Sheet Metal Workers' Nat'l Pension Fund v. Comm'r, 318 F.3d 599, 602-03 (4th Cir. 2003) (emphasis added). As we previously held, the

§ 4.12(a) benefit is an accrued benefit. Savani I, 474 F. App'x at 316. Because Taylor and the members of the subclass can or already do satisfy the requisite eligibility requirements for the § 4.12(a) benefit, WSMS may not lawfully eliminate that benefit as to Taylor and the subclass.

WSMS argues that Taylor and the members of the subclass had a mere, unprotected expectation of receiving the § 4.12(a) benefit because they did not satisfy the age and service requirements prior to December 31, 2005. In advancing this argument, WSMS relies heavily on the Eleventh Circuit's ruling in Cinotto v. Delta Air Lines, Inc., 674 F.3d 1285 (11th Cir. 2012). There, part of the Delta retirement plan definition of "Accrued Benefit" stated:

> No Participant shall have an Accrued Benefit based on future or projected service or Earnings regardless of the use of future dates by the Plan. Such future dates and the result of projected service on future Earnings on a Participant's potential retirement benefit are not part of the Participant's Accrued Benefit.

Cinotto, 674 F.3d at 1287-88. The Delta plan, like the Plan in this case, froze pension benefits with an amendment that provided: "Effective December 31, 2005, all benefits under the Plan are frozen for all Participants and there shall be no further accruals of benefits under this plan after that date." Id. at 1289. The amendment "also added this language to the end of the [Delta] Plan's definition of 'Accrued Benefit': 'A

12

Participant shall not accrue any additional benefits under the Plan after December 31, 2005.'" Id. Under the amendment, "no additional months of service or earnings would be taken into account in calculating either [an employee's] retirement or termination benefit under the [Delta] Plan." Id. As a result of the Delta plan language, the Eleventh Circuit held that the plaintiff, who had not reached the age required to receive the benefit at issue before December 31, 2005, "had at most an expectation of a future accrual." Id. at 1297.

Unlike the amendment to the Delta plan, the 2005 Amendment to the Plan at issue here explicitly incorporated future service into the calculation of an accrued benefit. Indeed, the 2005 Amendment stated that Plan members would continue to earn Eligibility Service years "to determin[e] eligibility for certain benefits," including the § 4.12(a) benefit. The unambiguous terms of the Plan provide that Eligibility Service years determine whether a Member "otherwise satisfies the requirements for a Pension under this Plan" such that he becomes eligible for the § 4.12(a) $700 supplement.[3] Accordingly, the appellants' reliance on Cinotto -- which involved a pension plan

---

[3] Pensions include, for example, the normal retirement pension set forth in Plan § 4.01, the early retirement pension set forth in Plan § 4.03, and the optional retirement pension set forth in Plan § 4.04. Each of these pensions references "Eligibility Service."

13

with a materially different definition of an "accrued benefit" -- is misplaced.  See Sheet Metal Workers' Nat'l Pension Fund v. Comm'r, 318 F.3d at 602-03 (stating that courts "look at the terms of the plan at issue").

WSMS also argues that the district court should have remanded this matter to the benefits committee because the reference to "certain benefits" in the Plan's definition of "Eligibility Service" is ambiguous.  Specifically, WSMS contends that it is unclear whether the term "certain benefits" encompasses the § 4.12(a) benefit.  This argument is unavailing. Before the 2005 Amendment, the definition of "Eligibility Service" included a single reference to "certain benefits," and the 2005 Amendment added a second reference to "certain benefits."  It is undisputed that the single, pre-2005 Amendment reference to "certain benefits" included the § 4.12(a) benefit. To credit WSMS's ambiguity argument would require a finding that the second use of the phrase means something different than the first.  There is no valid reason for the two uses of the same term within the same definition to have different meanings. Rather, the language of the 2005 Amendment is clear:  Plan members may continue to earn Eligibility Service years for certain benefits, including the § 4.12(a) benefit.  The benefits committee's discretion is not implicated given the unambiguous language of the amendment.  Kress, 391 F.2d at 567.

14

Accordingly, it was not error for the district court to decline to remand the matter.

Somewhat relatedly, WSMS argues that "Fourth Circuit law is clear that an ERISA plan participant is 'required' to exhaust his/her administrative remedies before bringing suit." It contends that the original lead plaintiff, Savani, "never challenged the meaning of 'certain benefits' of 'Eligibility Service' in the Freeze Amendment," and that "Taylor has never made any claim to the" benefits committee. Therefore, WSMS continues, because the district court's summary judgment ruling involved the interpretation of the Plan's terms, the court should have first remanded the matter to the benefits committee for it to interpret the Plan in the first instance. We need not decide whether any procedural error has occurred. In reaching its decision, the district court did not engage in any novel interpretation of the Plan's language. Rather, the law of this case is that the Plan's definition of accrued benefit includes the § 4.12(a) benefit, and as discussed above, the term "certain benefits" unambiguously encompasses the § 4.12(a) benefit. Thus, the benefits committee's authority to interpret the Plan is not implicated. See Kress, 391 F.2d at 567.

Finally, although the parties devote a substantial amount of their briefing to whether the § 4.12(a) benefit is an "early retirement benefit" as that term is defined in the applicable

15

regulations, we need not resolve the issue. Regardless of how the benefit is characterized from a statutory perspective, the fact remains -- however much WSMS might wish to deny it -- that the specific language of the WSMS Plan incorporates the § 4.12(a) benefit into the definition of "accrued benefit." And "[w]hile we have held that unfunded, contingent early retirement benefits or severance payments are not secured by ERISA itself, the drafters of a retirement plan may choose to define any benefits as accrued or vested, and thereby trigger ERISA's protections." Savani I., 474 F. App'x at 314 n.3 (citing Pierce v. Sec. Trust Life Ins. Co., 979, F.2d 23 (4th Cir. 1992)); see id. at 316 ("Stand-alone, ancillary welfare benefits generally are not independently protected by ERISA. Here, however, the Plan plainly incorporated . . . [§ 4.12(a)] into its definition of 'accrued benefit.'" (citation omitted)). Because WSMS made the choice to include the § 4.12(a) benefit as part of the Plan's accrued benefit, it is protected under the anti-cutback provision of ERISA. The WSMS must accept the consequences of that choice.

## III.

We reaffirm our holding that the Plan's clear terms include the § 4.12(a) supplement in the definition of "accrued benefit." Taylor and the subclass members are thus entitled to receive

16

that benefit so long as they satisfy the age and service requirements if and when they elect early retirement. For the foregoing reasons, the judgment of the district court is

AFFIRMED.